SHAW, Justice.
This appeal and petition for a writ of mandamus concern long-running litigation involving, in part, a dispute over whether certain property located in Autauga County can be applied to satisfy a judgment. In case no. 1091474, Willadean Walden and Crooked Creek Properties, Inc., appeal from an injunction issued by the Autauga Circuit Court restraining them from entering upon or asserting ownership or control over the property. In case no. 1100386, Richard Ensley petitions for a writ of mandamus directing the Montgomery Circuit Court to vacate an order entered by that court on December 21, 2010, and to transfer the underlying action to the Autauga Circuit Court. We have consolidated the appeal and the petition for the writ of mandamus for the purpose of writing one opinion.

Facts and Procedural History

The parties to the above-captioned actions are no strangers to this Court, and the facts giving rise to the present underlying actions are well established:
“When this action began, Walden, a high-school graduate, was an 83-year-old widow. Hugh Smith, a lawyer, was her business associate. On January 24, 1991, Walden lent Smith $50,000. To secure the debt, property held by the Smith Children Trust was transferred to Walden by warranty deed.... After Smith defaulted on the loan in 1993, Walden conducted a title search.... Fearing that there was no equity in the property, Walden confronted Smith and *93 demanded that he provide her with other collateral. Smith gave Walden a written promise to pay her $50,000 when he sold [Danya Park Garden Apartments,] an apartment building located in Prattville, Alabama.”
Ex parte Walden, 785 So.2d 335, 336 (Ala.2000). As a result of the foregoing transaction, Smith and others ultimately initiated litigation against Walden in the Montgomery Circuit Court (case no. CV-95-1093), seeking a judgment declaring the ownership of certain property. Walden filed several counterclaims against Smith, seeking damages for default on a promissory note, breach of a joint-venture agreement, and fraudulent suppression. Because a detailed summary of the background of these disputes was provided in Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007), from which we quote extensively below, we use the terms defined therein as defined terms in this opinion.
“While case no. CV-95-1093 was pending, Smith, an attorney representing Auburn Medical Center, Inc. (‘AMC’), became indebted to [George] Hutchinson in the amount of $310,000 in connection with the construction of a hospital in Auburn. On October 21, 1998, Smith, as president of [Hugh V. Smith Enterprises (‘the Enterprises’) ], gave Hutchinson a quitclaim deed to the [Danya Park Garden] apartments. In conjunction with the quitclaim deed, Hutchinson and Smith, individually and as president of the Enterprises, executed agreements purporting to show that Hutchinson was to hold the deed as collateral for Smith’s debt to Hutchinson and that the deed was to be recorded only upon Smith’s death or in the event he defaulted on the indebtedness.
“Subsequently, Walden obtained a favorable judgment for $187,166 in case no. CV-95-1093 on her counterclaims against Smith alleging breach of a promissory note and breach of a joint-venture agreement, but she suffered an adverse summary judgment on her fraudulent-suppression counterclaim. She appealed from the summary judgment, and the Court of Civil Appeals affirmed, without an opinion. Walden v. Smith Children Trust, 781 So.2d 1029 (Ala.Civ.App.1999) (table). This Court reversed the judgment of the Court of Civil Appeals and remanded the case for further proceedings on the fraudulent-suppression counterclaim. Ex parte Walden, 785 So.2d [335,] at 339 [(Ala.2000)].
“Meanwhile, on August 20, 1999, Hutchinson created the [George Ellis] Hutchinson[, Jr., Present Interest] trust [No. 1] for the benefit of his son, George Ellis Hutchinson, Jr. On August 26, 1999, Hutchinson executed a document purporting to ‘give[ ] and transfer[ ]’ to the Hutchinson trust ‘[a]ll monies advanced to AMC or its lawyers or funds used for any purpose for AMC and provided by George E. Hutchinson.’ ...
“By April 2000, Walden’s judgment against Smith in case no. CV-95-1093 remained unsatisfied. Consequently, on or about April 12, 2000, Walden filed an ‘application pursuant to Rule 70, Alabama Rules of Civil Procedure[,] for a judgment directing [Smith] to transfer stock [in the Enterprises] to [Walden], or, in the alternative, for an order divesting title to the stock in [Smith] and vesting title to the stock in [Walden].’ The application quoted extensively from Smith’s deposition testimony taken on February 3, 1997, in which Smith admitted that he was the ‘sole owner of all the stock in [the Enterprises],’ of which the apartments were the sole asset. On or about August 11, 2000, the Montgomery Circuit Court entered the following order:
[[Image here]]
*94 “ ‘. Willadean Walden is vested with and is the owner of all of the common stock in [the Enterprises] and [Smith] shall forthwith deliver and turn over to [Walden] all of the books and records of said corporation.’
“Subsequently, [Annee Caspari, the executrix of the estate of Hugh V. Smith,] sought to intervene in case no. CV-95-1093. According to Walden, Caspari’s first motion to intervene was denied on November 2, 2000, and a second motion was filed approximately a year later. The disposition of Caspari’s second motion is unclear. However, from an order entered by the Montgomery Circuit Court on June 5, 2002, it is clear that Caspari ‘appeared in court’ as trustee of the ‘Hugh V. Smith, Jr., Children’s Trust’ (‘the Children’s Trust’), contending that the Enterprises stock was, in fact, owned — not by Smith — but by the Children’s Trust, of which she was trustee....
[[Image here]]
“In short, the June 5, 2002, judgment set aside the August 11, 2000, judgment, which had purported to award Walden ownership of both the stock of the Enterprises and the apartments and, instead, awarded her a lien on the stock and the apartments in the amount sufficient to satisfy her judgment against Smith. Walden appealed from the June 5, 2002, judgment, challenging the jurisdiction of the Montgomery Circuit Court to set aside its August 11, 2000, judgment. On March 7, 2003, the Court of Civil Appeals affirmed the June 5, 2002, judgment, without an opinion. Walden v. Smith, 883 So.2d 743 (Ala.Civ.App.2003) (table). Walden sought certiorari review of that decision in this Court. Meanwhile, in March 2003, on remand from this Court, Walden obtained a judgment on a jury verdict against Smith on her fraudulent-suppression claim for $70,450. Walden sought the opportunity — through an appeal from that judgment, as well as through her petition for a writ of certiorari to the Court of Civil Appeals — to challenge in this Court the jurisdiction of the Montgomery Circuit Court to vacate its August 11, 2000, judgment. On April 16, 2004, this Court affirmed the March 2003 judgment, Walden v. Smith, 891 So.2d 837 (Ala.2004), and denied Walden’s certiorari petition. Ex parte Walden (No. 1021373), 916 So.2d 632 (Ala.2004) (table).
“On June 25, 2003, R. Wayne Sandlin and Richard Ensley were, as Hutchinson had originally been, unsecured creditors of Smith’s. On that date, while Walden’s appellate proceedings were pending in this Court, Sandlin and Ensley met and discussed ways to secure their accounts of approximately $147,000 and $127,000, respectively. At the time of the meeting, Sandlin and Ensley had actual knowledge of the litigation involving the stock in Enterprises and the apartments.
“In order to secure their accounts, Sandlin, Richard Ensley, and Patricia Ensley formed ES [Capital, LLC (‘ES’) ]. ES then ‘loaned’ the Enterprises $580,000. According to the ‘loan agreement,’ which was executed by Sandlin, as manager of ES, and by Cas-pari, as president of the Enterprises at that time, the loan proceeds were to be distributed among various persons and entities, none of which was Walden.... In return for the loan, ES received from the Enterprises a promissory note and a ‘first mortgage’ on the apartments. These instruments were signed on July 29, 2003, and the mortgage was recorded on August 4, 2003.
“Smith died on June 18, 2004, and, on August 16, 2004, Hutchinson recorded *95 his quitclaim deed. On October 12, 2004, Walden, whose judgment in the underlying case still remained unsatisfied, sought relief in case no. CV-95-1098, alleging that the June 5, 2002, judgment setting aside the August 11, 2000, judgment had been procured by a fraud on the court. According to Walden, Caspari’s attorneys, ‘as officers of the court, assured the court that Ms. Caspari would refinance the apartment complex, and [that] she would loan Mr. Smith sufficient funds to pay Mrs. Walden’s judgments.’ Walden alleged that ES was formed as a ‘mere sham’ in order to ‘simulate a mortgage on the apartment complex,’ with the purpose of ‘hindering, delaying, or preventing Mrs. Walden from collecting her judgments.’ She averred that the Enterprises mortgaged the apartments ‘in defiance of the court’s orders of ... August [11], 2000, and June 5, 2002, of which [the Ensleys, Sandlin, Smith, and Caspari] had actual or constructive knowledge.’
“Similarly, as to Hutchinson, Walden alleged that at the time the representations were made to the court that Cas-pari ‘would refinance the apartment complex and would make a loan to Mr. Smith to pay Mrs. Walden’s judgments, Mr. Smith was concealing the conveyance to Mr. Hutchinson from the court.’ Thus, according to Walden, ‘the quitclaim deed to Mr. Hutchinson’ also represented a fraudulent conveyance and ‘should be declared null and void.’ She averred that the court had set aside its August 11, 2000, judgment in reliance on the alleged misrepresentations, and she sought, among other things, the following specific relief:
“‘b. To hold Ms. Caspari in contempt of court for knowingly, willfully, and contumaciously violating the court’s orders and directives;
“‘c. To set aside the June 5, 2002, order on grounds that it was knowingly procured by misrepresentations amounting to a fraud upon the court, and because it was not based upon any legal evidence before the court;
“ ‘d. To reinstate' the August 11, 2000, order because it was based upon legal evidence ‘ before the court, i.e., testimony of witnesses and documentary evidence;
[[Image here]]
“ ‘g. To declare the mortgage to [ES] void ...; [and]
“ ‘h. To declare the quitclaim deed to George Hutchinson void.... ’
“Those individuals or entities that never became parties in case no. CV-95-1093 are Hutchinson, the Hutchinson trust, ES, Richard Ensley, Patricia Ens-ley, and Sandlin. Those who were parties in case no. CV-95-1093, however, agreed and consented to the entry of a judgment vacating the judgment of June 5, 2002, and reinstating the judgment of August 11, 2000, as requested by Walden. Thus, on October 26, 2004, the trial court entered a judgment pursuant to that agreement. As a result, Walden purportedly owned, once again, all the common stock in the Enterprises, as well as the apartments. The parties’ agreement was succinctly stated in an order entered on November 4, 2004, clarifying and correcting the October 26 order:
“ ‘[T]he intent of the August 11, 2000, order, which this court has reinstated, was to vest all of the common stock in [the Enterprises] in the plaintiff, Wil-ladean Walden. This court found from the evidence presented to the court on July 7, 2000, that [the Enterprises] owned Danya Park Garden Apartments, an apartment complex in *96 Prattville, Alabama. To clear up any confusion as to the owner of said apartment complex, the court hereby declares that the plaintiff, Willadean Walden[,] is the owner of the common stock in [the Enterprises], and she is, therefore, the owner of the fee simple title to [the apartments].’
“Thirteen days later, on November 17, 2004, Walden and Danya Park commenced [an] action, CV-04-390, in the Autauga Circuit Court, against, among others, Hutchinson; ES; Richard Ens-ley; Patricia Ensley; Sandlin; Caspari, individually and as trustee of the Children’s Trust; and the estate. Her complaint as last amended included claims of (1) ejectment, (2) conspiracy to defraud, and (3) trespass. In addition to these claims, as well as claims for declaratory and injunctive relief against the various parties, Walden’s complaint contained a claim to quiet title, seeking a judgment ‘declaring that she has the entire undivided fee simple interest in and to [the apartments] with no restrictions thereon.’ She also sought compensatory and punitive damages.
“The Hutchinson trust was allowed to intervene, and it filed a counterclaim against Walden. It sought a judgment declaring (1) that ‘the quitclaim deed executed from [the Enterprises] to George Hutchinson and ultimately transferred to the [Hutchinson trust constituted] a mortgage in favor of [the Hutchinson trust],’ and (2) that ‘Walden has no further interest, either legal or equitable, in the property the subject of this action other than her judgment liens.’
“The parties filed motions and cross-motions for a summary judgment. On October 27, 2005, the trial court entered a summary judgment in favor of Sand-lin, and certified the judgment as a final judgment pursuant to Ala. R. Civ. P. 54(b). Walden appealed, and this Court affirmed that judgment without an opinion in Walden v. Sandlin (No. 1050324, May 12, 2006), 976 So.2d 1059 (Ala.2006) (table).
“On December 4, 2006, the trial court entered a summary judgment in favor of ES; the Ensleys; Caspari, individually and as executrix of the estate of Hugh Smith; and Hutchinson ‘and/or’ the Hutchinson trust. In particular,[1] the trial court stated:
*97 “ ‘1. [T]he mortgage in favor of [ES] is hereby adjudicated as a good and valid mortgage on the [apartments] .... The mortgage is adjudicated as a superior lien to the claims of the Plaintiffs and to claims of Defendant George Hutchinson, or his assigns ....
“ ‘2. This court finds that the quitclaim deed executed in favor of Defendant George Hutchinson is, in fact, an equitable mortgage, and, based on the chronology as articulated herein, constitutes a subordinate and secondary lien on the [apartments] ... subject only to the first mortgage lien of the [ES] mortgage.
“ ‘3. ... [S]ummary judgment is hereby GRANTED in favor of Defendants [ES], Richard Ensley, and Patricia Ensley as to all claims filed by the Plaintiffs in this cause. This court further finds that Defendants Richard Ensley, Patricia Ensley, and [ES’s] motions for summary judgment are due to be, and are hereby GRANTED.
“ ‘4. ... George Hutchinson’s motion for summary judgment is hereby GRANTED to the extent that this court finds him and/or his assigns to have a secondary lien on the subject property....
“ ‘5. ... [S]ummary judgment is hereby GRANTED in favor of Annee Caspari, both individually, and as executrix of the estate of [Hugh V. Smith],
“ ‘6. ... Plaintiffs’ motions for summary judgment are DENIED and thus all of their claims against Defendants [ES], Richard Ensley, Patricia Ensley, and George Hutchinson are hereby DISMISSED.’
“Walden and Danya Park filed a motion to vacate the judgment pursuant to Ala. R. Civ. P. 59(e). On January 19, 2007, the trial court denied that motion and certified its judgment as final pursuant to Rule 54(b). From that judgment, Walden and Danya Park (hereinafter collectively referred to as Walden’) appealed.”
Walden v. Hutchinson, 987 So.2d at 1111-16 (footnotes omitted; some emphasis omitted). In the ensuing appeal, as to ES and the Ensleys, this Court affirmed the *98 summary judgment in all respects. 987 So.2d at 1122.
Following this Court’s affirmance of certain aspects of its summary judgment, the Autauga Circuit Court entered an order on April 14, 2008, following a hearing, holding that the George Ellis Hutchinson, Jr., Present Interest Trust No. 1 (“the Hutchinson trust”) was entitled to foreclose on the Danya Park Garden Apartments unless the outstanding principal and interest due were remitted within 80 days. Thereafter, on February 7, 2010, Walden, who had opted not to appear at the hearing on remand, filed a motion pursuant to Rule 60(b), Ala. R. Civ. P., seeking to vacate the trial court’s order and requesting that the trial court set aside as “facially void” both the December 4, 2006, summary judgment and the April 14, 2008, order in which the trial court held that the Hutchinson trust was entitled to foreclose its secondary lien on the apartments. The trial court denied Walden’s motion, which, in fact, was the third such motion filed by Walden requesting that the trial court vacate the April 14, 2008, judgment.[2] The second equitable mortgage was later foreclosed, as evidenced by a foreclosure deed dated April 27, 2010, and title to the apartments was accordingly vested in the Hutchinson trust subject to the first mortgage held by ES and any statutory rights of redemption.
Walden purportedly transferred all of her claimed ownership interest in the apartments to Crooked Creek Properties, Inc. (“Crooked Creek”), a Nevada Corporation. On January 13, 2009, Crooked Creek, as Walden’s purported successor-in-interest, instituted an action in the United States District Court for the Northern District of Alabama[3] against Richard Ens-ley, Patricia Ensley, Anita Liles,[4] ES, and Charles W. Edmondson, who had served as counsel of record for the purported property owners in the Autauga County quiet-title action. See Crooked Creek Props., Inc. v. Ensley, (No. 2:08-CV-1002-WKW[WO], Oct. 28, 2009) (M.D.Ala.2009) (not reported in F.Supp.2d) (“Crooked Creek I”). In its federal complaint, Crooked Creek sought damages under various theories, all of which were premised on the argument that Walden was the actual owner of the apartments. Specifically, in addition to numerous state-law causes of action, Crooked Creek’s federal complaint alleged violations of the substantive provisions of the Racketeer Influenced and Corrupt Organizations Act (“RICO”), see 18 U.S.C. § 1962(a)-(d), and sought various remedies, including the appoint *99 ment of a receiver to manage the apartments and the invalidation of both ES’s mortgage and Richard Ensley’s management contract.
During the pendency of the above-referenced federal action, Walden, individually, commenced a separate civil action against Edmondson in the Montgomery Circuit Court on August 28, 2009 (case no. CV-2009-901010).[5] In her complaint, Walden sought damages against Edmondson under claims of, among other things, conspiracy, tortious interference with business relations, violations of the Alabama Rules of Professional Conduct, and conversion. Walden’s complaint referenced Edmondson’s representation of Ensley in the Autauga Circuit Court case (case no. CV-04-390) and the subsequent appeal from the judgment in that case. Edmondson moved both to dismiss Walden’s Montgomery Circuit Court complaint and for the imposition of sanctions.
On October 28, 2009, the federal district court issued a memorandum opinion in Crooked Creek I granting separate motions to dismiss filed by the defendants, in which they “argue[d] that res judicata and/or collateral estoppel foreclose^] Crooked Creek from reigniting the ownership dispute.” Based on this Court’s decision in Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007), the district court ruled that the law of the case held as follows:
“The end result of the rulings in the Autauga County Suit, as affirmed by the Supreme Court of Alabama, was as follows: (1) The mortgage of ES Capital constitutes a valid lien on Danya Apartments; (2) ES Capital’s mortgage is a superior lien to the claims of Ms. Walden; and (3) the management agreement by which ES Capital operates Danya Apartments and collects rent is valid and enforceable, and ES Capital is entitled to collect these rent payments without interference from Ms. Walden.”
Because it further found that all of Crooked Creek’s claims “involve the validity of only two instruments: the mortgage and the management agreement,” the federal district court, after performing Alabama’s well established res judicata analysis, see Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990) (“The elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits.”), held that the Autauga Circuit Court’s judgment concluding that the management agreement was valid was a final judgment on the merits; that the Autauga Circuit Court possessed the requisite subject-matter jurisdiction over Walden’s quiet-title action and was, thus, a court of competent jurisdiction; and that, based on our decision in Dairyland, supra, and in consideration of the privity between Walden and Crooked Creek based on their successive relationship with regard to ownership of the apartments, “the parties in this lawsuit are identical to or in privity with the parties in the Autauga County Suit” despite the fact that neither Crooked Creek nor Edmondson had participated in the prior litigation. The United States Court of Appeals for the Eleventh Circuit affirmed the federal district court’s decision in an unpublished opinion issued on May 28, 2010, see Crooked Creek Props., Inc. v. Ensley (No. 09-15988, May 28, 2010), 380 Fed.Appx. 914 (11th Cir.2010) (not selected for publication in the federal reporter) (“Crooked Creek II ”), and subse *100 quently overruled Crooked Creek’s application for rehearing.
Following the dismissal of Crooked Creek’s federal court action, the Montgomery Circuit Court, in an order dated April 7, 2010, concluded that the action before it represented a collateral attack on previous judgments entered by courts of competent jurisdiction and that the issues presented in the action before it had been previously litigated and decided adversely to Walden. The Montgomery Circuit Court dismissed the case and imposed sanctions against Walden.[6]
In April 2010, Crooked Creek instituted a new civil action against Ensley, both individually and d/b/a Park Place Center, Ltd., and other defendants (hereinafter referred to as “the accounting action”),[7] also in the Montgomery Circuit Court (case no. CV-10-538), seeking an accounting of tenant rent moneys collected by Ensley in his role as manager of the apartments (count I); challenging and seeking cancellation and/or recission of Ensley’s contract to manage the apartments (count II);[8] and a permanent injunction “restraining and enjoining ... Ensley from again entering upon [the apartment] property” and “restraining and enjoining ... Ensley from obtaining possession of ... [a]partments’ tenants’ rent checks and from affixing unauthorized endorsements thereon” (count III). Ensley responded by moving to dismiss the accounting action or, in the alternative, to transfer it to the Autauga Circuit Court. Ensley cited numerous grounds in support of his motion to transfer, including that “[r]eal estate is clearly the subject matter of plaintiffs’ action and the real estate is situated in Autauga County.” Additionally, Ensley argued that the Montgomery Circuit Court should transfer the case to the Autauga Circuit Court under the doctrine of forum non conveniens. See § 6-3-21.1(a), Ala.Code 1975.
On May -17, 2010, the Montgomery Circuit Court, pursuant to a declaratory-judgment action in case no. CV-95-1093, issued an order stating that Walden remained the equitable owner of, and has the right to peaceful entry to, the apartments. The order provided as follows:
“THIS CAUSE coming before the court on plaintiffs’ application for the enforcement of this court’s judgments dated August [11], 2000, October 26, 2004, and November 4, 2004, and for good cause shown it is hereby
“ORDERED, ADJUDGED and DECREED as follows:
“1. That this court finds that it has the authority and the jurisdiction to enforce its previously awarded unappealed, unreversed, final judgments in favor of Willadean Walden, said judgments being an in rem judgment dated August [11], 2000, a consent judgment dated October *101 26, 2004, and a nunc pro tunc judgment dated November 4, 2004.
“2. Moreover, this court finds that it had jurisdiction of the parties and the subject matter, and that it acted in a manner consistent with due process of law when it entered each of the aforementioned judgments.
“3. That Willadean Walden as the equitable owner of Danya Park Apartments, Prattville, Alabama, has the right to the peaceful entry to said property and has a common law property owner’s right to forbid entry to her property to whomever she chooses.”
(Emphasis and capitalization in original.)
On May 20, 2010, in response to Walden’s renewed filings in the Montgomery Circuit Court, Richard Ensley, ES, and the Hutchinson trust filed in the Autauga Circuit Court a complaint and a motion for injunctive relief preventing Walden and Crooked Creek from enforcing the Montgomery Circuit Court’s May 17, 2010, order. This action was assigned case no. CV-10-900098. In support of that request, they alleged the following:
“Plaintiffs allege that unless this Court grants a preliminary injunction followed by a permanent injunction enjoining Willadean Walden, Crooked Creek Properties, Inc., their agents, officers, attorneys or assigns from taking any steps to enter upon the property of Danya Park Garden Apartments or to attempt to enforce the Order of the Circuit Court of Montgomery County, immediate and irrevocable injury and damage will occur and the operation of the apartments, the Management Agreement and the mortgages will be irrevocably harmed.”
Following a hearing, on June 11, 2010, the Autauga Circuit Court issued an order granting both preliminary and permanent injunctions enjoining Walden and Crooked Creek from enforcing the Montgomery Circuit Court’s May 17, 2010, order against any parties not named in that action. The Autauga Circuit Court’s order stated that “the Order entered by [the Montgomery Circuit Court] cannot bind these plaintiffs, who were not parties to the Montgomery County Action” and stated:
“1. The Plaintiffs in this case, ES Capital, LLC, Richard Ensley and the George Ellis Hutchinson, Jr., Present Interest Trust No. 1, have shown that Willadean Walden, Crooked Creek Properties, Inc., and their attorneys have repeatedly tried to circumvent the Orders of this Court and challenge this Court’s jurisdiction in other venues. The Alabama Supreme Court affirmed this Court’s decision in all material aspects. The Eleventh Circuit Court of Appeals [found] that Crooked Creek’s argument was nothing more than an attack on this Court’s application of the summary judgment standard....
“2. Judge Jack Meigs, sitting specially in the Circuit Court of Montgomery County, found that the suit brought by Willadean Walden against Charles Edmondson, CV-2009-901010, was ‘nothing more than a collateral attack on previous judgments entered by Courts of competent jurisdiction in this State.’ (Order of Judge Meigs admitted into evidence as Ex. L.)
“3. The Plaintiffs have shown that damages would not be an adequate remedy in this case and that they would be irrevocably injured and damaged if the Defendants in this case are allowed to continue their attempts to interfere with the management and operation of Danya Park Apartments and to collaterally attack the order of this Court and the Alabama Supreme Court by bringing yet more suits arising out of their claimed ■ownership of Danya Park Apartments or *102 by attempting to exert management of the apartments. Gatewood Walden, as attorney for Willadean Walden and Crooked Creek Properties, Inc., acknowledged at the June 2, 2010, hearing that he has filed yet another action against Richard Ensley .in the Circuit Court of Montgomery County and represented to the Court that he intends to file yet another. As noted, this Court has previously ruled that the Management Agreement is valid, that ES Capital, LLC has a valid first mortgage and that the George Ellis Hutchinson, Jr. Present Interest Trust No. 1 has a valid equitable second mortgage. This Court’s prior ruling is res judicata as to those issues.
“4. A Preliminary Injunction is hereby entered conditioned upon any one of the Plaintiffs filing a security for costs in the amount of $500.00. Willadean Walden, Crooked Creek Properties, Inc., their successors, representatives, attorneys, assigns, and Attorneys Gate-wood Walden and Scott Hooper are hereby enjoined from faxing, mailing, delivering by hand or serving a copy of the Order of the Circuit Court of Montgomery County dated May 17, 2010 upon the Sheriff of Autauga County or in any way attempting to interfere with the ownership or management of Danya Park Garden Apartments located on Danya Court in Prattville, Alabama. Willadean Walden, Crooked Creek Properties, Inc., and their successors, representatives, attorneys and assigns are further enjoined from entering upon or having anyone enter upon the property of Danya Park Apartments to assert any ownership of the Apartments or attempt to exercise any control over the Apartments. However, this Order is not intended to disallow the defendants any rights of redemption from the aforementioned foreclosure to which they might be entitled under Alabama law.
“5. Because, in Alabama, an action to determine the validity of title to real estate ‘must be commenced where the land is situated,’ which in this case is Autauga County. Ex parte Pratt, 514 So.2d 947, 949 (Ala.1987); and because an action to quiet title, such as the one previously brought by Willadean Walden in CV-04-390, Circuit Court of Autauga County, gives the circuit court jurisdiction ‘to determine and settle [title] as between the [plaintiff] and defendants.’ Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass’n., 947 So.2d 1031, 1036 (Ala.2006); and because ‘[w]hen jurisdiction has attached the court has a right to decide every question duly presented and arising on the case.’ Fife v. Pioneer Lumber Co., [237 Ala. 92, 95,] 185 So. 759, 762 (Ala.1939); the defendants and their attorneys, representatives and assigns are enjoined from bringing any action relating to the title, mortgages, management agreement or management of Danya Park Garden Apartments (also sometimes referred to as Danya Park Apartments) in any court other than the Circuit Court of Autauga County, from which the defendants are free to appeal.
“6. All parties were freely allowed to put into evidence whatever they desired at the hearing on June 2, 2010. It was expressly agreed by all parties at the conclusion of the June 2, 2010 hearing that no party wished to put on any additional evidence, and that there would not be any additional evidence to be considered by the Court in determining the merits of a permanent injunction. As such, the Application for Preliminary Injunction is hereby consolidated with the plaintiffs’ request for Permanent Injunction pursuant to Rule *103 65(a)(2) of the Alabama Rules of Civil Procedure and it is Ordered, Adjudged and Decreed that the injunction as set forth in this Order is made a Permanent Injunction.”
Walden and Crooked Creek Properties filed a timely notice of appeal to this Court on July 20, 2010, which appeal was assigned case no. 1091474.[9]
On December 21, 2010, following a hearing, the Montgomery Circuit Court entered an order in case no. CV-10-538 denying Ensley’s motion to transfer the accounting action to Autauga County, where the apartments are located. As to that issue, the Montgomery Circuit Court’s order concluded as follows: “This Court finds that this case arises out of the same common question of law and facts as the first case, Smith Children Trust v. Willadean Walden, CV-95-1093; therefore venue [in Montgomery County] is proper.” (Petition, Exhibit J.)[10] In its December 21, 2010, order, the Montgomery Circuit Court further ordered that “[Ensley] ... provide [Crooked Creek] with an accounting for the receipt and expenditure of all tenant rent monies for [the] ... [a]partments from the past six (6) years.” Id.
Ensley then filed a petition for writ of mandamus in this Court (case no. 1100386) seeking a writ directing that the Montgomery Circuit Court vacate its December 21, 2010, order and directing that the action be transferred to the Autauga Circuit Court.
I. Case no. 1091474 — Walden and Crooked Creek’s Appeal of the Au-tauga Circuit Court’s June 11, 2010, Injunction
Walden and Crooked Creek (hereinafter collectively referred to as “Walden”), appeal from the preliminary and permanent injunction entered on June 11, 2010, by the Autauga Circuit Court in favor of Ensley, ES, and the Hutchinson trust. Walden’s brief includes 10 separately enumerated issues, the majority of which directly challenge the authority of the Autauga Circuit Court to “countermand” and/or “enjoin” the Montgomery Circuit Court’s May 17, 2010, enforcement order and to enjoin Walden’s counsel from taking enforcement actions with regard to that May 17, 2010, order. See Rule 4(a)(1)(A), Ala. R.App. P. (providing for appellate review as of right from “any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction”). For the reasons *104 discussed below, we affirm the Autauga Circuit Court’s judgment in that regard.
Walden’s appeal also includes a request for a determination as to the validity and/or enforceability of the October 26, 2004, and November 24, 2004, judgments entered by the Montgomery Circuit Court (issue I); a challenge to the ES mortgage, which, she contends, was taken both “in violation of the [Montgomery Circuit Court’s] 2002 order” (Walden’s brief, at p. 7) and during litigation involving the mortgaged property, which, she says, makes the mortgage “void ab initio ” (Walden’s brief, at p. 8) (issues VIII and IX); and a challenge to Ensley’s management contract (issue X). However, those issues have been the subject of both previous unsuccessful appeals to this Court and of unsuccessful litigation in federal courts. See Walden v. Edmondson (No. 1091170, March 11, 2011), — So.3d - (Ala.2011) (table); Willadean Walden and Danya Park Garden Apartments, Inc. v. George Hutchinson et al. (No. 1090956, Nov. 18, 2010), see supra note 2; Crooked Creek I, supra; and Crooked Creek II, supra. Specifically, as set out above, we have previously held that the ES mortgage constitutes a valid lien on the apartments; that ES’s mortgage is superior to Walden’s interest; and that ES’s management agreement with Ensley is valid and enforceable. See Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007), and Crooked Creek I, supra.
In fact, Walden’s appeal in the present case largely reiterates previously litigated issues. In her own words, and as set out in the “summary of the argument” portion of her brief to this Court, Walden summarizes the nature of her claims as follows:
“[Walden] herein contend[s] that a settlement agreement once entered into, as transpired in CV-95-1093-P, Walden v. Smith, cannot be repudiated by either party and will be summarily enforced.
“[Walden] also contend[s] that an in rem judgment is as to the res conclusive as to all the world.
“Furthermore, [Walden] contend[s] that the Montgomery Circuit Court, a court of concurrent jurisdiction, had the inherent authority to enforce its unap-pealed, unreversed, valid, final judgments in CV-95-1093-P.
“In addition, [Walden] contend[s] that the Autauga Circuit Court, also a court of concurrent jurisdiction, lacked the power or authority to enjoin the Montgomery Circuit Court from enforcing its previously rendered unappealed, un-reversed, valid, final judgments. That is, the Autauga Circuit Court lacked subject matter jurisdiction over the Montgomery Circuit Court’s previously rendered unappealed, unreversed, valid final judgments such that it had no power to overrule those judgments, or reinstate an order that the Montgomery Circuit Court had vacated. In other words, the Autauga Circuit Court lacked the power to preclude that which the Montgomery Circuit Court had specifically allowed.
“Finally, [Walden] contend[s] that the Autauga Court’s 2006 summary judgment in CV-04-390-F amounted to an impermissible collateral attack on the unappealed, unreversed, valid, final judgments of the Montgomery Circuit Court, and thus the 2006 summary judgment was void for lack of subject matter jurisdiction.”
(Walden’s brief, at pp. 27-28; footnote omitted.)
The federal district court in Crooked Creek I held that the doctrine of res judi-cata barred the majority of the foregoing issues, and, in Walden v. Edmondson, the Montgomery Circuit Court agreed. Therefore, we address only Walden’s arguments relating to her contention that the *105 Autauga Circuit Court lacked jurisdiction to enter the June 2010 injunctive order.

Standard of Review

“ ‘To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest.’
“TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999), overruled on another point of law, Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala.2008). The entry of a permanent injunction is reviewed de novo, TFT, Inc., 751 So.2d at 1241; however, this Court has recognized that a ‘a trial court’s consideration of ore tenus testimony has a bearing upon the standard of review we apply to the entry of a permanent injunction.’ Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692, 701 (Ala.2008). See also Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683 (Ala.2009) (according a presumption of correctness to portions of the trial court’s decision based on representations of counsel regarding a settlement agreement where a permanent injunction was issued).”
Sycamore Mgmt. Group, LLC v. Coosa Cable Co., 42 So.3d 90, 93 (Ala.2010).

Discussion

A.

Initially, Walden contends that the Montgomery Circuit Court’s May 17, 2010, order is a valid, unappealed final judgment and, therefore, that the Autauga Circuit Court, a court of concurrent jurisdiction, lacked authority to “countermand[ ]” that judgment. (Walden’s brief, at p. 6.) Specifically, Walden argues that “the Autauga Circuit Court in effect permanently enjoined [the Montgomery Circuit Court] from enforcing [its] own previously rendered unappealed, unreversed, final judgments in CV-95-1093-P, and permanently enjoined Mrs. Walden from entering her own property.” Id,. In support of that claim, Walden cites merely general authority indicating a court “has the inherent power to issue orders or process as are necessary to enforce its judgments.” Patterson v. Patterson, 703 So.2d 372, 372 (Ala.Civ.App.1997).[11] See also Hall v. Hall, 485 So.2d 747, 749 (Ala.Civ.App.1986) (“It has long been recognized that a court has the inherent power to issue such orders or process as is necessary to enforce its judgments.”). She further maintains, as she has repeatedly maintained in the past, that the Montgomery Circuit Court’s November 2004 order was not challenged on appeal by any party to that proceeding and that, therefore, the Montgomery Circuit Court maintains the inherent power to enforce that judgment, which, she says, the Montgomery Circuit Court merely did in its May 17, 2010, “enforcement judgment.” (Walden’s brief, at p. 36.)
As the Court of Civil Appeals has stated:
“It is well settled that, when two circuit courts have equal and concurrent *106 jurisdiction, the court which first exercised its jurisdiction in a matter has preference. Rush v. Simpson, 373 So.2d 1105 (Ala.Civ.App.1979). The court where jurisdiction has first attached has the exclusive right to continue to exercise its power, subject only to appellate authority, until the matter before it is finally and completely disposed of. Jordan v. Jordan, 251 Ala. 620, 38 So.2d 865 (1949). Such jurisdiction of that circuit court extends to proceedings which are ancillary or incidental to the matter before it, as well as to proceedings for the enforcement of its decrees. Rush v. Simpson, supra.
“Another court with concurrent jurisdiction may, nevertheless, act in the same matter if there is no objection to its doing so. Sheffield v. Sheffield, 350 So.2d 1056 (Ala.Civ.App.1977). A court of concurrent jurisdiction may also take action upon a showing that some special equity exists in favor of a complaining party with which the court first having jurisdiction is without authority to deal. Jordan v. Jordan, supra.
“These principles are essential to the proper and orderly administration of the law. They must be enforced in order to promote judicial comity and courtesy, as well as to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and process. Jordan v. Jordan, supra; Rush v. Simpson, supra.”
Swigert v. Swigert, 553 So.2d 607, 608 (Ala.Civ.App.1989). Further,
“[t]he jurisdiction of the tribunal, where jurisdiction first attaches, continues until the judgment rendered in the first action is satisfied, and extends to proceedings which are ancillary or incidental to the action first brought, Vinyard v. Hayes, 30 Ala.App. 595, 10 So.2d 299 (1942); Morris v. McElroy, 23 Ala.App. 96, 122 So. 606 (1929), and to proceedings for the enforcement of the court’s decrees. Ex parte Burch, 236 Ala. 662, 184 So. 694 (1938); Clements v. Barber, 49 Ala.App. 266, 270 So.2d 815 (1972).”
Rush v. Simpson, 373 So.2d 1105, 1108 (Ala.Civ.App.1979), superseded by statute on other grounds, § 12-15-101 et seq., Ala. Code 1975, as recognized in Ex parte L.N.K., 64 So.3d 656, 657 (Ala.Civ.App.2010).
This is not a case involving “concurrent jurisdiction.” Had the Montgomery Circuit Court been competent to adjudicate the rights of all parties claiming an interést to the apartments, or had the subsequent quiet-title action merely been ancillary to the previous action between Willadean Walden and Smith, then it would have been unnecessary for Walden to have invoked the jurisdiction of the Autauga Circuit Court in an effort to oust ES and Ensley from the apartments. However, the Montgomery Circuit Court was an improper venue for such an action. See § 6-3-2, Ala.Code 1975, and Glenn v. Wilson, 455 So.2d 2 (Ala.1984); see also Ex parte Pratt, 514 So.2d 947, 949 (Ala.1987) (holding that venue in an action to determine the validity of title to real estate “must be commenced where the land is situated”); TenEyck v. TenEyck, 885 So.2d 146, 153 (Ala.Civ.App.2003); and Crooked Creek II, supra.
Moreover, the original Autauga Circuit Court case (case no. CV-04-390) was not materially the same as the original Montgomery Circuit Court action (case no. CV-95-1093) between Smith and Willadean Walden. Specifically, the Montgomery Circuit Court action featured both different parties and different causes of action. Thus, as noted above, this is not a case of concurrent jurisdiction.
*107 Further, it is clear that the Montgomery Circuit Court’s May 17, 2010, order was based on a previous order, which had been superseded by the December 4, 2006, summary judgment of the Autauga Circuit Court in case no. CV-04-390 and by this Court’s affirmance of that judgment in Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007). Therefore, Walden’s declaratory-judgment action in case no. CV-10-538 represented nothing more than an attempt to enforce a superseded order that was clearly contrary to the established law of the case as between these parties, as set out above in the Autauga Circuit Court case (case no. CV-04-390), and that was affirmed by this Court on appeal.[12] See Walden v. Hutchinson and Crooked Creek I, supra.
“ ‘[U]nder the “law of the case” doctrine, “whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” ’ Lary v. Flasch Bus. Consulting, 909 So.2d 194, 198 [(Ala.Civ.App.2005)] (quoting Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)).”
Miller & Miller Constr. Co. v. Madewell, 920 So.2d 571, 572-73 (Ala.Civ.App.2005).
“ ‘The law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided.’ ”
Martin v. Cash Express, Inc., 60 So.3d 236, 249 (Ala.2010) (quoting Belcher v. Queen, 39 So.3d 1023 (Ala.2009)). The record reveals no facts that have changed since this Court affirmed the Autauga Circuit Court’s summary judgment in case no. CV-04-390, see Walden v. Hutchinson, 987 So.2d 1109 (Ala.2007), and we see no reason to reconsider this issue in the present appeal. Nor was the Autauga Circuit Court permitted to reconsider the issue; in fact, it is well settled that a trial court may not issue an order that is in direct contravention of an opinion of this Court:
“ ‘ “A lower court is without power to modify, alter, amend, set aside or in any manner disturb or depart from the judgment of the reviewing court as to any matter decided on appeal.... Under any other rule, litigation would never cease, and finality and respect for orderly process of law would be overcome by chaos and contempt.” ’ ”
Ex parte Woodard, 883 So.2d 256, 260 (Ala.Crim.App.2003) (quoting with approval Hutchison v. Luddy, 763 A.2d 826, 835 (Pa.Super.2000), appeal denied, 567 Pa. 743, 788 A.2d 377 (2001), quoting in turn Haefele v. Davis, 380 Pa. 94, 98, 110 A.2d 233, 235 (1955)). We have further “applied the law-of-the-case doctrine as a bar to subsequent appeals regarding the same issue.” Bessemer Bd. of Educ. v. Tucker, 999 So.2d 957, 960 (Ala.Civ.App.2008) (citing Robbins v. Sanders, 927 So.2d 777, 784 *108 (Ala.2005)). Our rules permit application of that principle even if the previous judgment was affirmed without an opinion. See Rule 53(d), Ala. R.App. P. (“An order of affirmance issued by the Supreme Court or the Court of Civil Appeals by which a judgment or order is affirmed without an opinion ... shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar.” (emphasis added)).
To the extent that Walden’s pleadings in the underlying Montgomery Circuit Court action and in the resulting appeal represent an attempt to challenge previous holdings of this Court, they are frivolous, mer-itless, and — as at least four courts have already concluded — barred by the doctrine of res judicata. In similar circumstances involving a request for injunctive relief to halt “harassing] and vexatio[us]” litigation on matters that were previously concluded between the parties, we have stated:
“It is stated in Pomeroy’s Equity Jurisprudence, Yol. 1, 5th Ed., 1941, § 261j, p. 551, as follows:
‘“The prevention of vexatious, oppressive and ruinous litigation is a frequent cause for the exercise of equity jurisdiction, and injunctions to restrain a multiplicity of suits in such cases are not only permitted, but favored, by the courts. A conspiracy to prosecute, by concert of action, numerous baseless claims against the same person for the wrongful purpose of harassing and ruining him, partakes of the nature of a fraudulent conspiracy, and the bringing of such suits will be enjoined to prevent a multiplicity of suits which would subject the plaintiff to enormous expense and inconvenience.’
“In Meredith v. John Deere Plow Co. of Moline, Ill., 8th Cir., 1958, 261 F.2d 121, 124, cert. denied, 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574 [(1959)], the court had a similar injunction before it and stated:
“‘As to appellee’s right to the injunction issued, the subjecting of another to repeated, baseless and vexatious suits at law on some particular subject matter is, without reference to other considerations, a sufficient ground for the issuance of an injunction against the perpetrator. First State Bank v. Chicago, R.I. & P.R. Co., 8 Cir., 63 F.2d 585, 590, 90 A.L.R. 544 [(1933)]; Lee v. Bickell, 292 U.S. 415, 421, 54 S.Ct. 727, 78 L.Ed. 1337 [(1934)]. See also Martin v. Beaver, 238 Iowa 1143, 29 N.W.2d 555, 558 [(1947)].’
“The language used by the Supreme Court of Minnesota in the case of Favorite v. Minneapolis Street Ry. Co., 253 Minn. 136, 91 N.W.2d 459 [(1958)], is appropriate here.... In granting in-junctive relief the court said:
“ ‘... Repeated litigation of a right which has been adjudicated with finality is without any legitimate purpose and constitutes a vexatious and oppressive harassment of a litigant in contravention of his right to a speedy and efficient administration of justice. If successive suits could be brought to litigate the same questions between the same parties or their privies as often as either should choose, remedial justice would soon become a mere mockery. It is generally recognized to be proper for a court to issue a permanent injunction to restrain the initiation of successive suits and proceedings to relitigate a cause of action — based on the same facts and with identical issues and parties— *109 which has already been adjudicated with finality.’ ”
Johnston v. Bridges, 288 Ala. 156, 159-60, 258 So.2d 866, 868-69 (1972), overruled on other grounds, Pierce v. Orr, 540 So.2d 1364 (Ala.1989). See also Grimes v. Liberty Nat’l Life Ins. Co., 726 So.2d 615, 618 (Ala.1998) (affirming the injunction entered by trial court, which had exercised jurisdiction over the plaintiffs claims as part of class-action litigation, prohibiting the plaintiff “from relitigating in another forum any claims ... that she, as a member of the ... class, had released.... ”).
The issues Walden now attempts to reassert ‘“[have previously] been adjudicated with finality.’ ” Johnston, 288 Ala. at 160, 258 So.2d at 869. Therefore, in consideration of our holding in Johnston, we uphold the authority of the Autauga Circuit Court to enjoin Willadean Walden and Crooked Creek from further “baseless and vexatious suits” aimed at establishing their ownership of the apartments, and we hereby affirm the June 11, 2010, order doing so. Johnston, supra.

B.

Walden next contends that the Autauga Circuit Court’s injunction is deficient because, she argues, it fails to comply with Rule 65(d)(2), Ala. R. Civ. P. Specifically, she maintains that the Autauga Circuit Court failed to provide reasons for issuing the injunction that have a “relevant, definable, nexus to the ultimate purpose of the restraining order” and that the plaintiffs failed to demonstrate, and the injunction failed to state, that irreparable harm would result without the issuance of the restraining order. (Walden’s brief, at p. 38.)
In Butler v. Roome, 907 So.2d 432 (Ala.2005), we stated:
“Rule 65(d)(2), Ala. R. Civ. P., requires:
“ ‘Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.... ’
“This Court has repeatedly held that the language of Rule 65(d)(2) is mandatory and requires that an order issuing a preliminary injunction state reasons for issuing the injunction and that it be specific in its terms. Appalachian Transp. Group, [Inc. v. Parks,] 738 So.2d [878] at 883 [(Ala.1999)]; Bankruptcy Auths., Inc. v. State ex rel. Evans, 592 So.2d 1042, 1044-45 (Ala.1992); Teleprompter of Mobile, [Inc. v. Bayou Cable TV,] 428 So.2d [17] at 20 [(Ala.1983)]; and Tapscott v. Fowler, 437 So.2d 1280, 1282 (Ala.1983).
“In Teleprompter of Mobile, the plaintiff cable company alleged that the defendant cable company had intentionally cut the plaintiffs cables while installing its own cables. The trial court entered a preliminary injunction enjoining the defendant from cutting the plaintiffs buried television cables, which stated:
“ ‘ “This cause coming on to be heard on application for Preliminary Injunction ... and the Court hearing testimony offered and exhibits presented into evidence and the Court having duly considered all matters ... the Court at this time is of the opinion that the Preliminary Injunction should issue, and upon consideration, it is ORDERED and DECREED by the Court that a Preliminary Injunction, be, and hereby is issued in this cause restraining the Defendants and each of them, from willfully and wantonly cutting, tampering, or otherwise obstructing Plaintiffs television cables or interfering with the signals passing through them, pending a hearing on *110 the merits of this cause, upon the Plaintiff posting a bond with the Register of this Court-” ’
“Teleprompter of Mobile, 428 So.2d at 20.
“After reviewing the order, this Court held:
“ ‘It is apparent the order does not comply with Rule 65(d)(2)[, Ala. R. Civ. P]. There are no reasons given for the issuance of the preliminary injunction; not even a recital that irreparable loss to [the plaintiff cable company] will result if the injunction is not issued. Under Rule 65 it is mandatory that a preliminary injunction order give reasons for issuing the injunction, be specific in its terms, and describe in reasonable detail the act or acts sought to be restrained.’
“428 So.2d at 20 (emphasis [on second sentence] added).
“Applying our holding in Teleprompter of Mobile and its progeny to the facts of this case, we must dissolve the preliminary injunction because the trial court’s order does not satisfy the mandatory requirements of Rule 65(d)(2), Ala. R. Civ. P. Like the order reviewed in Teleprompter of Mobile, the trial court’s order in this case does not contain the reasons for its issuance, nor does the order state that Roome will suffer irreparable loss if the injunction is not issued. Therefore, the order does not comply with Rule 65(d)(2), and it must be dissolved.”
907 So.2d at 434-35 (emphasis added as indicated).
Similarly, in Elliott v. Ole Town Ventures III, L.L.C., 777 So.2d 132 (Ala.Civ.App.2000), the Court of Civil Appeals stated:
“In Appalachian Transportation Group, Inc. v. Parks, 738 So.2d 878 (Ala.1999), the preliminary injunction failed to satisfy Rule 65(d)(2) requirements, because it did not contain the reasons for issuing the injunction. Also, the trial court had failed to state that irreparable harm would occur without the issuance of an injunction restraining the potential buyer of another corporation’s assets from collecting moneys due from accounts receivable, or from contacting customers or debtors during the option period on the purchase contract. In the present case, the injunction does not set out the reasons for its issuance and it does not state that but for an injunction irreparable harm would occur.”
777 So.2d at 134 (emphasis added). See also Bankruptcy Auths., Inc. v. State ex rel. Evans, 592 So.2d 1042, 1044-45 (Ala.1992) (dissolving permanent injunction for failure to comply with Rule 65(d)(2) based on noted absence of “specific reasons stated for the issuance of the permanent injunction” and on the trial court’s failure to “describe in reasonable detail, without reference to other parts of the court’s file, the act or acts restrained”).
Here, the trial court issued an 11-page order recounting the procedural history of the underlying litigation regarding the ownership of the apartments, including Willadean Walden’s and Crooked Creek’s repeated initiation of new but related suits in other jurisdictions; their refusal to abide by the unfavorable outcome of that previous litigation; and the Montgomery Circuit Court’s May 17, 2010, order. Further, preceding the recitation of the enjoined conduct, the trial court’s order noted both “that Willadean Walden, Crooked Creek ..., and their attorneys have repeatedly tried to circumvent the Orders of this Court and challenge this Court’s jurisdiction in other venues” and that “[t]he Plaintiffs have shown that damages would *111 not be an adequate remedy in this case and that they would be irrevocably injured and damaged if [Willadean Walden and Crooked Creek] are allowed to continue their attempts to interfere with the management and operation of Danya Park Apartments....” Thus, unlike the orders in Butler and Elliott, the trial court’s order in this case does clearly state the reasons for issuing the injunction, i.e., Walden’s continued efforts to relitigate issues that had previously been resolved unfavorably to her, and concludes that should the injunction fail to issue, irreparable harm— potentially by means of further inconsistent orders and further meritless litigation — would occur if Walden were permitted to continue in those efforts. In light of the foregoing recitations by the trial court, it is apparent that the injunction order was sufficiently detailed. Cf. Martin v. First Fed. Sav. & Loan Ass’n of Andalusia, 559 So.2d 1075, 1077 (Ala.1990) (concluding that the trial court’s preliminary-injunction order, in which it found that “ ‘... the [individual] Defendant ..., the agents, servants, or employees of the corporate Defendant, have deliberately converted to the use of the Defendants monies due to be paid to the Plaintiff; and have actively engaged in conduct which would be detrimental to the Plaintiffs assertion of the rights granted to Plaintiff to collect payments due’ ” complied with the requirements of Rule 65(d)).
In the case presently before us, the trial court’s order notes that “[Walden’s] past actions suggest that plaintiffs have a valid reason to be concerned,” regarding potential interference with management of the apartments. In support of that conclusion, the trial court cited a January 2007 order in which it ordered Willadean Walden and/or her attorney to repay $4,200 to ES, which sum “represented] money improperly intercepted by [Willadean Walden] from tenants of the ... [a]partments.... ” Therefore, the trial court’s order makes it clear that Walden had, in the past, “engaged in conduct which would be detrimental to the Plaintiffs’] assertion of the rights granted to Plaintiffs] to collect [rental] payments due” from tenants of the apartments. Martin, 559 So.2d at 1077. Because the reasons for the issuance of the injunction were clearly indicated on the face of the order and because those reasons were, as demonstrated by the present ease, well founded, we reject Walden’s contentions that the trial court’s order fails to satisfy the mandatory requirements of Rule 65(d)(2).
Because we find that the Autauga Circuit Court possessed the authority to enter its June 11, 2010, injunction and, in so doing, complied with the mandatory requirements of Rule 65(d)(2), that judgment is affirmed.
II. Case no. 1100386 — Richard Ensley’s Petition for the Writ of Mandamus
With regard to the related accounting action in the Montgomery Circuit Court, Ensley petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate, in its entirety, the December 21, 2010, order and directing it to transfer the accounting action to the Autauga Circuit Court.[13] We grant the petition and issue the writ.

Standard of Review

“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order *112 sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). This Court reviews mandamus petitions seeking review of a venue determination by asking whether the trial court exceeded its discretion in granting or denying the motion for a change of venue. Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala.2002).’
“Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003).
“ ‘ “The question of proper venue for an action is determined at the commencement of the action.” Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001). “If venue is not proper at the commencement of an action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper.” Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999). “A petition for a writ of mandamus is the appropriate means for challenging a trial court’s refusal to transfer an action and such a petition is due to be granted if the petitioner makes a clear showing of error on the part of the trial court.” Ex parte Alabama Power Co., 640 So.2d 921, 922 (Ala.1994). “In considering a mandamus petition, we must look at only those facts before the trial court.” Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995).’
“Ex parte Walter Indus.[, Inc.], 879 So.2d [547] at 549 [(Ala.2003)].”
Ex parte AAMCO Transmissions, Inc., 897 So.2d 285, 287-88 (Ala.2004).

Discussion

In support of the motion seeking a change of venue, Ensley’s primary contention was that venue in the Montgomery Circuit Court is improper because the real property at issue is located in Autauga County. Specifically, as noted above, Ens-ley argues that “[r]eal estate is clearly the subject matter of [Crooked Creek’s] action,” and, therefore, pursuant to § 6-3-2, Ala.Code 1975, and Rule 82, Ala. R. Civ. P., venue is proper where the real estate is situated, namely Autauga County.
“In determining whether venue is proper in a particular case, we look to statutory provisions as the ‘primary guideposts.’ ” Ex parte Pratt, 514 So.2d 947, 948-49 (Ala.1987) (quoting Ex parte Lamb, 400 So.2d 386, 387 (Ala.1981)).
“Section 6-3-2 provides:
“ ‘(a) In proceedings of a legal nature against individuals:
“ ‘(1) All actions for the recovery of land, or for the possession thereof or for a trespass thereto must be commenced in the county where the land or a material part thereof lies.
‘“(2) All actions on contracts, except as may be otherwise provided, must be commenced in the county in which the defendant or one of the defendants resides if such defendant has within the state a permanent residence.
“ ‘(3) All other personal actions, if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of such residence or in the county in which the act or omission complained of may have been done or may have occurred.
“ ‘(b) In proceedings of an equitable nature against individuals:
“ ‘(1) All actions where real estate is the subject matter of the action, whether it is the exclusive *113 subject matter of the action or not, must be commenced in the county where the same or a material portion thereof is situated.
“ ‘(2) If the action is to enjoin proceedings on judgments in other courts, it may be commenced in the county in which such proceedings are pending or judgment entered.
“ ‘(8) Except as may be otherwise provided, actions must be commenced in the county in which the defendant or a material defendant resides.
[[Image here]]
“(Emphasis added.) See also Rule 82, Ala. R. Civ. P., which governs venue of actions only when the application of § 6-3-2(a) and § 6 — 3—2(b) to claims for legal and equitable relief produces inconsistent venues.
“While Alabama rule and statute provide that, where real estate is the subject matter of an action, venue is proper in the county where the real estate is located, Alabama courts have recognized also that
“ ‘ “[a]n allegation that ‘one of the parties owns real estate, or has substantial rights in real estate which are dependent upon the settlement of the controversy, is not enough to make real estate the “subject matter” of the suit.’ Alabama Youth Services Board v. Ellis, 350 So.2d 405, 408 (Ala.1977).” ’
“Ex parte AU Hotel, Ltd., 677 So.2d 1160, 1162 (1996) (quoting Ex parte Diamond, 596 So.2d 423, 425 (Ala.1992)).
“‘This court has held that the term “subject matter,” as it is used in our venue statutes and rules, “refers to the nature of the cause of action and the nature of the relief sought.” Ex parte Jim Walter Homes, Inc., 712 So.2d 733, 736 (Ala.1998). This Court has held that real property is not the subject matter of a personal-injury action seeking damages or injunctive relief in regard to claims arising from a real-estate transaction. See id. at 737 (holding that real estate was not the subject matter of the action where the plaintiffs sought to recover damages for negligence and fraud in connection with a land transaction); Ex parte AU Hotel, Ltd., 677 So.2d 1160, 1163 (Ala.1996) (holding that real estate was not the subject matter of the action where the plaintiff sought to recover damages for fraud and civil conspiracy, based on representations made in connection with a land transaction). If a complaint does not allege damage or harm to real estate or seek to affect the title to real estate, then real estate is not the subject matter of the action. See Ex parte AU Hotel, Ltd., 677 So.2d at 1163.’
“Ex parte Nichols, 757 So.2d 374, 377 (Ala.1999) (emphasis added).”
Ex parte Ambrose, 813 So.2d 806, 808-10 (Ala.2001).
Here, it is apparent that in the Montgomery County action Crooked Creek seeks not to enjoin activity on or directly affecting the land, but to enjoin a particular, named individual from future alleged trespasses onto the apartment property. Cf. Ex parte Pickens Coal Co., 544 So.2d 960, 961 (Ala.1989) (holding that a complaint seeking compensation for damages to plaintiffs’ real property allegedly arising from defendant coal company’s blasting operations was an action “for damage to real property” and that venue was proper in county where the land was situated). In Shomo Land Co. v. Johnson, 280 Ala. 398, 194 So.2d 554 (1967), we considered the issue of proper venue in “a suit in equity to enjoin, in personam, certain named individuals from trespassing on complainant’s *114 land.... ” 280 Ala. at 400, 194 So.2d at 556. Specifically, we found applicable the statutory precursor to § 6-3-2 and held that, pursuant to that Code section, “the suit could have been brought in either Mobile or Monroe County,” i.e., either the county in which the defendants resided or where the land was located. Id. See also Ex parte Clardy, 460 So.2d 1273, 1275 (Ala.1984) (distinguishing Shomo from an action in which the relief sought was “to protect petitioners’ interest in the use and enjoyment of their land” on basis that Shomo involved an effort “to enjoin, in personam, certain named individuals from trespassing on a particular piece of property,” and restating the holding in Shomo as holding that “proper venue for the trespass was either the situs of the complainants’ property or the county of the residence of the defendants”).
Here, Crooked Creek’s complaint seeks equitable relief solely against Ensley.[14] Therefore, “[its] complaint sounds in equity” and, because it is aimed at Ensley, an individual, “ § 6 — 3—2(b)(3)[ ] is controlling.” Ex parte Taylor, 583 So.2d 1301, 1303 (Ala.1991). Under the Shomo analysis, and pursuant to § 6 — 3—2(b)(3), which governs proper venue in actions against individuals sounding in equity, the action must have been commenced either in Elmore County, where Ensley’s undisputed, affidavit testimony indicates he resides, or in Autauga County, where the apartments are located.
Because venue in Montgomery County was improper as to Ensley, “ ‘then, upon motion of [Ensley], the action [should have been] transferred to a court where venue would be proper.’ ” Ex parte De Vega, 65 So.3d 886, 892 (Ala.2010) (quoting Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999)).
“Rule 82(d)(1), Ala. R. Civ. P., provides: ‘When an action is commenced laying venue in the wrong county, the court, on timely motion of any defendant, shall transfer the action to the court in which the action might have been properly filed and the case shall proceed as though originally filed therein.’ (Emphasis added.)”
Schreck v. Friedman, 981 So.2d 1125, 1128 (Ala.Civ.App.2007). Because, as the Court of Civil Appeals in Schreck observed, the language of Rule 82(d)(1), Ala. R. Civ.App., is “mandatory,” the trial court exceeded its discretion in denying Ensley’s motion to transfer the case to the Autauga Circuit Court. Id. See also Ex parte Travis, 573 So.2d 281, 282 (Ala.1990) (holding that, because “[t]he language of both the rule and the statute is mandatory,” “[a] judge’s failure to follow their mandate would be an abuse of discretion”).
In reaching the foregoing conclusion we specifically reject both the conclusion of the Montgomery Circuit Court that “jurisdiction” was proper in Montgomery County in light of the previous litigation between Willadean Walden and Smith and the applicability of the rule that “[t]he jurisdiction of the tribunal, where jurisdiction first attaches, continues until the judgment rendered in the first action is satisfied, and extends to proceedings which are ancillary or incidental to the action first brought ... and to proceedings for the enforcement of the court’s decrees.” Rush v. Simpson, 373 So.2d at 1108. Here, Ensley was not a party to that previous litigation in or to judgments issued by the Montgomery Circuit Court. In fact, it is *115 undisputed that Ensley was never named as a party to the previous Montgomery Circuit Court litigation between Willadean Walden and Smith, nor was the issue of the validity of Ensley’s management contract ever presented to that court. Walden v. Hutchinson, 987 So.2d at 1115. Therefore, the accounting action is not ancillary to the original action, nor does the present action affect the Montgomery Circuit Court’s inherent authority to enforce its judgment as to the parties named in that original action. Instead, the present case arises from a separate action involving both new parties and different facts than those at issue in the original litigation between Willadean Walden and Smith, specifically, the quiet-title/ejectment action first prosecuted against Ensley in the Au-tauga Circuit Court (case no. CV-04-390).[15] Schreck, 981 So.2d at 1127.
Moreover, to the extent that Walden’s current challenge to Ensley’s management contract constitutes an attack on the previous judgment of the Autauga Circuit Court, which upheld that contract as valid and enforceable, see Walden v. Hutchinson, 987 So.2d at 1116, 1122, then it would be required to “be filed in the county in which such ... judgment [was] entered.” § 6 — 3—2(b)(2).[16]
The dispositive issue in this matter is whether the Montgomery Circuit Court erred in refusing to transfer the accounting action to the Autauga Circuit Court. Because we conclude that, at the time the case was filed, venue was proper in either Elmore County or Autauga County but was improper in Montgomery County, we grant Ensley’s petition for a writ of mandamus. Accordingly, we direct the Montgomery Circuit Court to vacate its December 21, 2010, order in its entirety and direct that the entire matter be transferred to the Autauga Circuit Court.[17]
*116 1091474 — AFFIRMED.
1100386 — PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, MAIN, and WISE, JJ., concur.

. With regard to the Montgomery Circuit Court’s August 11, 2000, order, the Autauga Circuit Court’s summary-judgment order in case no. CV-04-390 also stated:
"The record ... reveals that subsequent to the execution of the mortgage, ... Walden appealed the entry of the Montgomery Court order of June 5, 2002, to the Alabama Court of Civil Appeals wherein she raised, among other contentions, the following issue:
" 'Whether or not the trial court had jurisdiction to vacate, alter or amend its August 11, 2000 order.’
"The record further reveals that Walden's appeal was affirmed by the Alabama Court of Civil Appeals on or about the 7th day of March, 2003, and that the same issue was, pursuant to ... Walden's subsequent petition for writ of certiorari denied/affirmed by the Alabama Supreme Court on or about the 16th day of April, 2004. See Walden v. Smith, 891 So.2d 837 [(Ala.2004)].
"It appears that despite the outcome of the aforementioned issue which was affirmed on appeal, that subsequent hearings continued in the Montgomery Court in response to efforts by Walden to collect on her judgments. Consequently, [Walden] contend[s] that such ongoing litigation again deprives ... ES ... from holding a valid first mortgage lien as it is not a bona fide mortgagee. At the conclusion of the hearing on the motion for summary judgment, this Court requested that the parties provide supplemental briefs addressing whether such continued litigation served to [affect] the priority of said mortgage if not the validity of same as well as the claim of ... Hutchinson. This Court has now con *97 sidered the supplemental briefs and finds that the order entered by the Montgomery Court on June 5, 2002, which served to vacate the award of stock to ... Walden in that case and thus permit the mortgage on the ... [a]partments was a final judgment and was ultimately affirmed through the appeal process. As a result, this Court finds that the Montgomery Circuit Court's order of June 5, 2002, became the law of the case such that the Montgomery Court lost its jurisdiction to override that decision when, in November 2004, it ordered the reinstatement of its prior order of August 2000[,j thereby again awarding the common stock to ... Walden but this time in derogation of the rights of certain Defendants in this cause who now had an interest in the property, none of whom were parties to the Montgomery litigation. The Court finds that issues decided by an Appellate Court in a given case become the law of the case and the trial court has the duty to comply with the appellate mandate. Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala. 1983); Ex parte Jones, 774 So.2d 607, 608 (Ala.Civ.App.2000). See also Travis v. Travis, 875 So.2d 1212, 1214 (Ala.Civ.App.2003). See also Parsons Steel, Inc. v. Beasley, 600 So.2d 248, 252 (Ala.1992).
"That is not to say that the Montgomery Circuit Court was without jurisdiction to enforce its judgments to the extent that the same did not affect the rights of other parties or to the extent that the order was not a substantive modification of an otherwise effective and unambiguous final order. See George v. Sims, 888 So.2d 1224, 1227 (Ala.2004).”

. Walden's appeal from the denial of her post-judgment motion was dismissed as frivolous in Willadean Walden and Danya Park Garden Apartments, Inc. v. George Hutchinson et al. (No. 1090956, Nov. 18, 2010). In addition to the order dismissing the appeal, by separate order this Court also imposed, pursuant to Rule 38, Ala. R.App. P., sanctions against Walden and Danya Park Garden Apartments, Inc., based on “the frivolous nature of [the] appeal....”

. The federal complaint, under the heading of "background” information, indicated that, following her unsuccessful appeal of the judgment of the Autauga Circuit Court, "WALDEN, who was 91 years of age, conveyed all of her stock in DANYA APARTMENTS to plaintiff.” The heading of the complaint identified the "Plaintiff” as “Crooked Creek Properties, Inc., a Nevada Corporation, whose principal place of business is located in Bakersfield, California.”

.Crooked Creek’s amended federal complaint described Liles as “the on-site manager” of the apartments, whose duties include " Teasing the apartment units, evicting low-income families who fail to pay rent, keeping records, hiring and overseeing repairmen ... and ... groundskeepers, and collecting tenants’ monthly rent checks.’ ” Crooked Creek Props., Inc. v. Ensley, (No. 2:08-CV-1002-WKW[WO], Oct. 28, 2009) (M.D.Ala.2009) (not reported in F.Supp.2d).

. Despite her representations to the federal district court that her interests in the apartments had been transferred to Crooked Creek, the Montgomery Circuit Court action was again commenced in Walden’s own name.

. On appeal, this Court affirmed the trial court’s dismissal without an opinion and further imposed damages on Walden under Rule 38, Ala. R.App. P. Walden v. Edmondson (No. 1091170, March 11, 2011), - So.3d - (Ala.2011) (table).

. The heading of Crooked Creek’s complaint in the accounting action appears to list, in addition to Ensley, both fictitiously named individual defendants and fictitiously named corporate defendants; however, as of the time of its present appeal, nothing indicates that Crooked Creek has substituted actual parties for those fictitiously named defendants. Further, the body of the complaint in the accounting action contains only three counts, all of which are aimed solely at Ensley.

.We note that Crooked Creek has again included a claim challenging Ensley’s management contract despite the fact that that issue has previously been decided unfavorably to Crooked Creek and/or Walden in more than one forum, as noted above.

. The Autauga Circuit Court's order also contained the following response to Walden’s repeated assertion that the plaintiffs in that case had every opportunity to intervene in the Montgomery Circuit Court litigation:
"Willadean Walden’s attorney argued at the hearing on June 2, 2010, that the plaintiffs in this case could have intervened in the Circuit Court of Montgomery case. However, a party seeking a judgment binding on another cannot obligate that person to intervene. Mann v. City of Albany, Georgia, 883 F.2d 999 (11th Cir.1989). Under Alabama law, the duty to join necessary parties is ordinarily placed upon the plaintiff in the suit. Ex parte Izundu, 568 So.2d 771 (Ala.1990) (citing J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 849 (Ala.1981)). Thus, as the plaintiff in the Montgomery County action, the duty was upon Willade-an Walden to be certain that the proper parties were included. See also, Hodge v. State, 643 So.2d 982 (Ala.Civ.App.1993) (holding that it is the duty of the plaintiff to join any indispensable parties).
”... A declaratory judgment action is binding only on the parties to the action in which the judgment was sought. B.W.T. v. Haynes & Haynes, P.C., 20 So.3d 815 (Ala.Civ.App.2009).”

. The trial court made no mention of the fact that Ensley had never been named a party to that initial litigation.

. In her brief, Walden further cites this Court’s decision in Ex parte Sharpe, 513 So.2d 609 (Ala.1987), as authority for the proposition that “[a] court has jurisdiction to determine its own jurisdiction and the decision of a court that it has jurisdiction is conclusive.” (Walden’s brief, at p. 33 n. 30.) However, Walden has failed to include a pinpoint citation to Sharpe, which deals with the service requirements contained in Rule 21, Ala. R.App. P., and we are unable to find anything to that effect in Sharpe. See Rule 28(a)(10), Ala. R.App. P. (noting that ”[c]itations shall reference the specific page number(s) that relate to the proposition for which the case is cited”).

. We note that, although we do not have a transcript of any proceedings conducted by the Montgomery Circuit Court in preparation for issuing its May 2010 order, the transcript of the May 19, 2010, hearing conducted by the Autauga Circuit Court clearly reflects that none of the defendants in the Autauga Circuit Court case were allowed to participate in the hearing in the Montgomery action because they had never been named as parties to that case. Therefore, it is unclear whether, in issuing the May 17, 2010, "enforcement order," the Montgomery Circuit Court was aware of the numerous proceedings that had occurred in other courts and on appeal subsequent to the entry of its November 4, 2004, order purporting to vest title to the apartments in Willadean Walden.

. Ensley further asserts that the December 2010 order improperly ordered an accounting before Ensley's answer and/or the presentation of evidence and improperly and prematurely included rulings on substantíve matters such as discovery. As discussed in more detail below, however, it is unnecessary for us to reach the merits of that additional claim.

. In fact, in its response in opposition to Ensley’s motion for a change of venue, Crooked Creek acknowledges both that " '[a] bill for accounting states a case of equitable relief’ " (quoting Ingram v. People’s Fin. & Thrift Co. of Alabama, 226 Ala. 317, 318, 146 So. 822, 823 (1933)), and that it filed the complaint seeking rescission or cancellation of Ensley’s contract because it ”do[es] not have an adequate remedy at law.”

. It is apparent from Crooked Creek’s own recitation of the facts in its response to Ens-ley’s petition for the writ of mandamus that the accounting action and renewed attempt to cancel Ensley's management contract arises from Crooked Creek’s dissatisfaction with the Autauga Circuit Court’s ruling in that quiet-title/ejectment action, which was directly related to Ensley’s management of the apartments. In fact, Crooked Creek’s entire brief discusses issues pertinent to the validity of the Montgomery Circuit Court's 2004, 2006, and 2010 judgments — matters that, Ensley correctly notes, fall clearly outside this mandamus petition, while failing to cite authority in support of the argument that venue is proper in the Montgomery Circuit Court.

. We are aware that the same logic could be applied to the injunctive relief obtained by the appellees in case no. 1091474, in which the relief obtained from the Autauga Circuit Court was specifically aimed at "enjoin[ing] proceedings on judgments in other courts,” namely the Montgomery Circuit Court, and should, therefore, have ”be[en] commenced in ... [Montgomery] [C]ounty ... [where] such ... judgment [was] entered.” § 6 — 3—2(b)(2). However, it is also true that an objection to improper venue may be waived if not included in a defendant’s initial responsive pleading, see Rule 12(b), Ala. R. Civ. P., and there is nothing in that record to indicate that Walden ever challenged venue in that action, nor does she make that argument on appeal.

.Our decision obviates the need to reach the other issues raised by Ensley in his mandamus petition, namely, whether the trial court also erred in prematurely ruling, in its December 21, 2010, order, on substantive issues presented in the case, because Ensley's challenges in that regard may be addressed by the Autauga Circuit Court upon transfer. See Rule 82(d), Ala. R. Civ. P. ("When an action is commenced laying venue in the wrong county, the court, on timely motion of any defendant, shall transfer the action to the court in which the action might have been properly filed and the case shall proceed as though originally filed therein.”); Ex parte Miller, Hamilton, Snider & Odom, LLC, 978 So.2d 12, 14 (Ala.2007) ("The doctrine of forum non conveniens is applicable only '[w]ith respect to civil actions filed in an appropriate venue.’ § 6-3-21.1(a) (emphasis added).”).