Jim Walter Homes, Inc., petitions for a writ of mandamus directing Judge H. Edward McFerrin of the Lowndes County Circuit Court to transfer an action from that court to the Montgomery County Circuit Court. In their amended complaint, the plaintiffs, Willie G. Thomas and Jacquelyn Thomas, who are residents of Montgomery County, made claims alleging fraud against Jim Walter Homes and claims alleging negligence and wantonness against Anthony O. Henry. Jim Walter Homes responded by moving to dismiss the action, or, in the alternative, to transfer it to Montgomery County, where the Thomases reside. Relying on Ala. Code 1975, § 6-3-2 and § 6-3-7, Jim Walter Homes argued that the subject matter of the Thomases' complaint involved an alleged personal injury, and, therefore, that venue was not proper in Lowndes County. However, the trial court, applying § 6-3-2(b)(1), denied the motion to transfer, stating that the action had "real estate as its subject matter." We grant the petition in part and deny it in part.
We note at the outset that the proper remedy for one seeking to avoid the unnecessary expense of a trial in the wrong forum following an adverse ruling on a motion to change venue is a writ of mandamus. Elmore County Commission v. Ragona,540 So.2d 720, 725 (Ala. 1989). A writ of mandamus will be issued only if the petitioner has a clear legal right to the order sought. Exparte Diamond, 596 So.2d 423, 424 (Ala. 1992). Transfer of the Thomases' action is appropriate only if it is clear from the record that the venue in which the Thomases filed their complaint was improper. Ex parte Sierra Dev., Inc.,652 So.2d 251, 253 (Ala. 1994). Having raised the issue, Jim Walter Homes has the burden of proving improper venue. See Ex parte Lashley,596 So.2d 890 (Ala. 1992); Ex parte Ralston, 519 So.2d 488
(Ala. 1987).
In 1991, Henry contacted the Thomases, seeking to purchase a plot of land known as lot # 12 located in the Town Creek subdivision of White Hall, which is in Lowndes County. Henry and the Thomases agreed that Henry would purchase lot # 12. The Thomases closed the sale at the office of Jim Walter Homes in Montgomery, where, in exchange for their signature on the deed, they received a check for $1,500 from Henry. Henry took possession of the deed. Henry and Jim Walter Homes had previously entered into a contract whereby Jim Walter Homes had agreed to construct a house on lot # 12 on the condition that Henry qualified for a loan. In connection with the construction contract, Jim Walter Homes took a mortgage from Henry to secure the payment of the construction price of the house. Aware of this arrangement, the Thomases specifically asked Jim Walter Homes not to record Henry's deed until Henry received the loan. The Thomases alleged that they were assured by a Jim Walter Homes employee that the deed would not be recorded until Henry had secured financing for the home. An agent for Jim Walter Homes, however, recorded the deed in Lowndes County on December 2, 1991. Henry was unable to secure the necessary financing for the home; he then contacted the Thomases and told them that he no longer wished to purchase the land, whereupon the Thomases destroyed the check. Both sides believed at that time that the sale had been rescinded. Henry, however, remained the record owner of lot # 12 and later began receiving notices from the tax assessor informing him of accrued ad valorem taxes due on the property. Henry never responded to these notices and he never notified the Thomases that he had received them. The taxes were never paid, and lot # 12 was ultimately sold at a tax sale to Winston Pringle.
The dispositive issue is whether the trial court erred in refusing to transfer the action out of Lowndes County. In addition to the alleged negligence of Henry, the Thomases based their complaint on the alleged fraudulent acts that they say occurred at the office of Jim Walter Homes in Montgomery County. Jim Walter Homes is a foreign corporation conducting business in Montgomery *Page 735 
County, and Henry is an individual residing in Bullock County. The record does not disclose whether Jim Walter Homes does business in Bullock County. As noted, the Thomases reside in Montgomery County. Although lot # 12 is located in Lowndes County, the parties apparently do not dispute that the alleged acts upon which the fraud, negligence, and wantonness claims are based occurred outside Lowndes County. In addition to seeking compensatory and punitive damages, the Thomases also stated in their complaint that they were seeking "equitable relief in the manner of title to lot # 12 being rightfully returned to [them]."
The Thomases contend that venue in this case is governed by § 6-3-2(b)(1), which provides as follows:
 "(b) In proceedings of an equitable nature against individuals:
 "(1) All actions where real estate is the subject matter of the action, whether it is the exclusive subject matter of the action or not, must be commenced in the county where the same or a material portion thereof is situated."[1]
The Thomases argue that § 6-3-2(b)(1) is applicable because, they say, the "the main objective in filing the complaint was to regain legal title to lot # 12 . . . [and,] though [it is] not the exclusive matter," the real estate is the "subject matter" of their action. The Thomases place great weight on the fact that in addition to stating that they were seeking compensatory and punitive damages, they alleged that they were seeking equitable relief in the nature of the return of title to lot # 12.
Relying on § 6-3-7 and Ex parte Combined Ins. Co.,678 So.2d 1055 (Ala. 1996), Jim Walter Homes argues that an action against a foreign corporation for damages for personal injury must be commenced in the county where the injury occurred or in the county of the plaintiffs' residence, if the corporation does business in that county. Section 6-3-7 provides:
 "A foreign corporation may be sued in any county in which it does business by agent, and a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose; provided, that all actions against a domestic corporation for personal injuries must be commenced in the county where the injury occurred or in the county where the plaintiff resides if such corporation does business by agent in the county of the plaintiff's residence."
The language in § 6-3-7 concerning personal injury actions against domestic corporations applies to personal injury actions against foreign corporations as well. Ex parte CombinedIns. Co., supra. Thus, according to Jim Walter Homes, the proper venue for the alleged fraud claims is Montgomery County, because the acts complained of occurred there, the Thomases reside there, and Jim Walter Homes does business there. Furthermore, Jim Walter Homes argues, under § 6-3-2(a)(3) venue in a personal injury action against a resident individual is proper in the county where the act or omission complained of occurred or where the defendant resides; according to Jim Walter Homes, that would make venue for the negligence and wantonness claims against Henry proper in Bullock County, but not in Lowndes County.[2] *Page 736 
If the subject matter of the Thomases' action is the real estate, then venue is proper in Lowndes County and mandamus relief is not available. See § 6-3-2(b)(1); Ex parte Diamond, 596 So.2d at 425. If, on the other hand, the subject matter of the action is a personal injury for which the plaintiffs claim damages, then venue is not proper in Lowndes County and a writ of mandamus is appropriate. See § 6-3-2 and § 6-3-7. The allegations of the complaint, which we assume to be true, indicate that all of the events leading up to the filing of the Thomases' action can be traced to the conveyance of lot # 12 from the Thomases to Henry. However, the allegations in the complaint do not lead to the automatic conclusion that lot # 12 is necessarily the "subject matter" of the action. Therefore, we must determine whether the "subject matter" of the action is, indeed, real estate.
"Subject matter," as that term is used in § 6-3-2(b)(1), refers to the nature of the cause of action and the nature of the relief sought. See Clark v. Sanders, 267 Ala. 674,103 So.2d 370 (1958); Ex parte Diamond, 596 So.2d 423 (Ala. 1992). In Ex parte Diamond, this Court held that even though a partnership note was secured by real property, the relief sought was monetary compensation and, therefore, that the real property was not the subject matter of the action. 596 So.2d at 425. Moreover, mere allegations that a party owns real estate or has substantial rights in real estate does not, in itself, make the real estate the subject matter of the action. AlabamaYouth Services Board v. Ellis, 350 So.2d 405, 408 (Ala. 1977).
In Ex parte AU Hotel, Ltd., 677 So.2d 1160 (Ala. 1996), a dispute arose out of negotiations and resulting agreements regarding the construction and operation of a conference center and hotel on the campus of Auburn University in Lee County. AU Hotel, Ltd., operated the hotel under a sublease agreement between it and the City of Auburn. Auburn University operated the conference center under a sublease agreement with AU Hotel, Ltd. After a disagreement arose concerning the manner in which Auburn University was promoting the hotel, AU Hotel, Ltd., and Thelma Dixon, one of its limited partners, sued Auburn University and its former president, James E. Martin, in Covington County, where Dixon resided. This Court discussed the nature of the plaintiffs' complaint:
 "The complaint, which named Martin in both his official and individual capacities, sought damages from Auburn University for breach of contract, and from Auburn University and Martin for, among other things, fraud and civil conspiracy, based on representations allegedly made to Dixon by Martin in Covington County regarding, among other things, projections of hotel business income. The complaint also sought 'rescission of the agreements entered into between the parties' and a judgment requiring Auburn University specifically to perform the agreement to 'use its best efforts to publicize the availability of the services provided by the hotel.' "
677 So.2d at 1161. The Covington Circuit Court transferred the action to Lee County. Citing Ex parte Diamond, this Court held, among other things, that the hotel property was not the subject matter of the litigation and, therefore, that venue was not statutorily required in Lee County. The basis for this Court's holding was that the action did not seek to litigate the issue of title to real property.
In Ex parte Lamb, 400 So.2d 386 (Ala. 1981), which the Thomases rely on, the plaintiff sought reformation of a conveyance involving title to real estate or the impressment of a lien as a result of the alleged fraudulent procurement of a deed. This Court held that where at least one count in a complaint seeks to effect a change in title to real estate, that real estate is the "subject matter" of the action, for purposes of venue, even though the real estate may not be the exclusive subject matter. Therefore, venue was proper in the county where the land was located. Lamb, 400 So.2d at 388; see also Wesson v. Wesson, 514 So.2d 947 (Ala. 1987) *Page 737 
(real estate was the subject matter where the complaint and the claim for relief involved the validity of a conveyance of real estate, which in turn determined title to the real estate).
In Ex parte Taylor, 583 So.2d 1301 (Ala. 1991), the plaintiffs filed an action in Mobile County against several individuals and corporations, alleging various claims of fraud, breach of contract, and breach of warranty, all stemming from the sale of two condominium units located in Baldwin County. The plaintiffs also complained of alleged defects in the units. The plaintiffs sought relief in the form of money damages for emotional distress, as well as for the rescission of the condominium sales contract. This Court held that although the plaintiffs did not seek exclusively equitable relief, "their complaint sound[ed] in equity." Taylor, 583 So.2d at 1303. Therefore, this Court concluded, because the subject matter of the complaint was the Baldwin County real estate, and because the plaintiffs were seeking equitable relief, venue was appropriate in Baldwin County. Id.
We note that the distinguishing characteristic between Exparte Taylor and Ex parte AU Hotel is that in Taylor the plaintiffs sought to have their contract for the sale of the condominium units rescinded; a rescission would have affected title to the property. In AU Hotel, on the other hand, the subject matter of the complaint was a lease; this Court described the action as being transitory in nature, i.e., as being in personam, instead of in rem. 677 So.2d at 1162. That is, based on the allegations in the complaint, the title to the real estate in Taylor would have been affected by the outcome of the action. In the present case, the Thomases sought compensatory and punitive damages based on allegations of fraud, negligence, and wantonness in connection with Jim Walter Homes' recording the deed in Lowndes County and Henry's failing to notify them about the tax notices. Indicative of the true nature of the Thomases' complaint is the fact that the Thomases chose not to join Winston Pringle, who holds the tax deed and who would be a necessary party with respect to any issue concerning the nature of the title.[3] In other words, the Thomases' action cannot resolve the issue of title to lot # 12 without the presence of Pringle in the action. An action purporting to adjudicate title to real property is not binding on a person claiming title to, or an interest in, the property, if that person's identity is ascertainable through the exercise of reasonable diligence and yet that person is not made a party to the action. See, e.g., Dominey v. Mathison, 292 Ala. 293,293 So.2d 472 (1974). The Thomases attempt to deal with this problem in their brief:
 "Incidentally, the land at issue is located in Lowndes County. This same land after being transferred to Henry was subsequently sold by the Lowndes County Tax Collector at a tax sale to another individual and would have to be redeemed through the probate judge of Lowndes County, Alabama."
If the main objective for filing a complaint is to resolve the issue of legal title to a parcel of land, then the statute is clear — venue is proper in the particular county where the land is situated. However, neither Jim Walter Homes nor Henry holds legal title to the property. Neither of those defendants has an interest in the real estate that could possibly lead to a resolution of the issue of legal title. Ex parte Diamond, 596 So.2d at 425. Although the Thomases alleged that it was the combined acts of the defendants that caused them to lose title to lot # 12, they have not joined a party whose presence in the action would be necessary for a court to provide them the equitable relief they seek. Therefore, we conclude that lot # 12 is not the "subject matter" of the Thomases' action and, therefore, that venue is not proper in Lowndes County.
Based on the above, we hold that venue was not proper in Lowndes County and that the trial court erred in not transferring the action to a proper venue. We note that personal injury actions against foreign corporations must be commenced in the county *Page 738 
where the injury occurred or in the county where the plaintiff resides if the corporation does business by agent in that county. § 6-3-7; Ex parte Combined Ins. Co., supra. Jim Walter Homes asserts that all of the alleged acts relevant to the Thomases' fraud claims occurred in Montgomery County and that it conducts business in Montgomery County. The record indicates that the Thomases reside in Montgomery County and that Jim Walter Homes conducts business by agent in Montgomery County, but that Henry resides in Bullock County. Judge McFerrin is directed to transfer the action, but whether it should be transferred to Montgomery County or possibly to Bullock County is a matter for him to decide.
PETITION GRANTED IN PART AND DENIED IN PART.
HOOPER, C.J., and MADDOX, KENNEDY, and SEE, JJ., concur.
SHORES and COOK, JJ., dissent.
BUTTS, J., recuses himself.
[1] The Thomases also argue that § 6-3-2(a)(1) is applicable. That subsection deals with the proper venue for actions of a legal nature against individuals for the recovery of land, etc. The only language in the complaint that relates to the title of lot # 12 is the Thomases' statement that they were also seeking "equitable relief in the manner of title to lot # 12 being rightfully returned to [them]." Therefore, we will not venture beyond the four corners of the complaint to discern the Thomases' intent regarding their claim for the return of title. The complaint speaks for itself and purports to state only a claim of an equitable nature for the recovery of land.
[2] For purposes of determining proper venue, allegations of fraud and negligence are allegations of "personal injuries." Ex parteMitchell, 690 So.2d 356, 358 (Ala. 1997); Ex parte SierraDevelopment, Inc., 652 So.2d 251, 253 (Ala. 1994); Ex parteSouthTrust Bank, 619 So.2d 1356 (Ala. 1993); Ex parte TranSouthFinancial Corp., 608 So.2d 385 (Ala. 1992); see also Ex parteLashley, 596 So.2d 890 (Ala. 1992) (holding that actions based on negligence and wanton conduct are personal injury actions). An injury occurs where the act or omission takes place, not where the resulting damage may occur. See Ex parte SouthTrustBank, supra; Ex parte Shuttlesworth, 420 So.2d 256 (Ala. 1982) (in a malicious prosecution action, the injury occurs where the initial prosecution was brought); Age-Herald Publishing Co. v.Huddleston, 207 Ala. 40, 92 So. 193 (1921) (for purposes of venue, libel occurred in the county where the newspaper was published and not in the counties of circulation).
[3] The Thomases were aware, before filing their action, that Pringle had purchased lot # 12 at a tax sale. (Complaint at ¶¶ 12 15.)