Rel: March 13, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0452

————————————————

## Ex parte Woodrow Alan Carter

## PETITION FOR WRIT OF MANDAMUS

## (In re: Austin Moore, Adam Day, and A&A Investment Property, LLC

## v.

## Woodrow Alan Carter et al.)

## (Dallas Circuit Court: CV-24-900347)

McCOOL, Justice.

Woodrow Alan Carter is a defendant in an action currently pending in the Dallas Circuit Court ("the circuit court"), and he has petitioned this Court for a writ of mandamus, asking us to direct the circuit court to grant his motion for a change of venue. For the reasons set forth herein, we grant the petition and issue the writ.

Facts and Procedural History

Austin Moore, Adam Day, and A&A Investment Property, LLC ("the plaintiffs"), are the owners of real property -- specifically, a commercial building ("the building") -- that is located in Dallas County. At the time of the events giving rise to this case, the plaintiffs had an insurance policy ("the policy") that had been sold and issued to them in Dallas County by Auto-Owners Insurance Company ("Auto-Owners"), and the policy generally provided insurance coverage for "direct physical loss of or damage to" the building. According to the plaintiffs, in June 2024 the building was damaged "as a result of trespass, vandalism and theft," so they submitted an insurance claim to Auto-Owners, which employs Carter as a claims representative. Carter "work[s] out of [his] home office in Mobile County," and, although his duties require him to travel to other Alabama counties, Dallas County is not among them.

2

However, Carter was tasked with reviewing the plaintiffs' insurance claim "due to overflow."

Following an inspection of the building, which was conducted by "a third-party independent investigator," Carter sent the plaintiffs a letter explaining that their insurance claim had been denied. In that letter, Carter purported to quote a provision of the policy that, he said, prohibited insurance coverage for any damage that occurred to the building if the building was "vacant" at the time it was damaged. According to Carter, that provision stated, in relevant part:

"6. Vacancy

"a. Description of Terms

> "(1) As used in this Vacancy Condition, the term … vacant ha[s] the meaning[] set forth in (1)(a) and (1)(b) below:

>> "(a) … [The] building is vacant when it does not contain enough business personal property to conduct customary operations.

>> "(b) … [The] building is vacant unless at least 31% of its total square footage is:

>>> "….

"2) Used by the building owner to conduct customary operations.

"....

"b. Vacancy Provisions

"If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

"(1) We will not pay for any loss or damage caused by any of the following ....

"(a) Vandalism;

"....

"(e) Theft."

Relying on the foregoing, Carter's denial letter stated:

"We completed an inspection of your property on June 14, 2024. During the inspection it was determined that the structure was the support branch for People's Choice Bank. Per the field adjuster the building was vacant at time of loss. Per the insured the building is used as a storage facility for their plumbing business but was emptied out for possible sale of the property.

"....

"During the inspection, we observed damage to the electrical wiring in the building as well as the generators. We did not see any signs of a customary business. Our inspection concluded that there was significant theft/vandalism damage to the electrical wiring as well as some ceiling tiles to the interior of the rooms. The building is at the end of a secluded

4

road not visible by traffic. The adjuster stated that the cameras were all pointed up and no recording of the theft/vandalism was available. We received an estimate for the damages to the electrical in the amount of $485,000; this did not include repairing the generators. Per the photos and statements from the field adjuster the building appears to be a vacant building. Your policy specifies that such building is vacant when it does not contain enough business personal property to conduct customary operations. You have stated there has never been an active business and have never had a tenant in the building.

"Based on the facts as they have been presented and the … policy language, we have no alternative but to respectfully deny your claim."

After receiving the denial letter, the plaintiffs filed a complaint against Carter in the circuit court, asserting claims of slander, the tort of outrage, and fraud and deceit. In support of their claims, the plaintiffs alleged, in short, that Carter had fraudulently denied their insurance claim by "alter[ing] the terms and/or conditions of the … policy in the denial in order to manipulate the … claim into a pre-determined position that would allegedly support the denial" and by "deliberately and intentionally ignor[ing] evidence that supported payment of the claim and/or wrongfully categoriz[ing] evidence in a manner that would support the wrongful and fraudulent denial." The plaintiffs also alleged that Carter had "defame[d] and slander[ed]" them by misrepresenting to

5

third parties that they had committed "felonious criminal conduct" -- namely, "filing and/or pursuing a false and/or fraudulent insurance claim." As relief for their claims, the plaintiffs seek damages for the "value of the unpaid [insurance] claim," "mental anguish" and "damage to reputation"; they also seek punitive damages.

Following the filing of the complaint, Carter filed a motion to change the venue to Mobile County. Carter supported his motion with his affidavit, in which he attested that he had "never resided in Dallas County"; that, "at all times material to this case," he had been "a permanent resident of Mobile County" and had "work[ed] … within Mobile County"; that he had not traveled to Dallas County in conjunction with his review of the plaintiffs' insurance claim and that, instead, "[t]he on-site inspection … was … conducted by a third-party independent investigator"; and that all of the actions he had taken in reviewing the plaintiffs' insurance claim, including his telephone and email communications and his issuance of the denial letter, had "originated from Mobile County." Thus, according to Carter, venue for the plaintiffs' action is proper in Mobile County. Carter also filed an answer to the complaint, in which he defended his denial of the plaintiffs' insurance

claim on the basis that the claim "was barred under the policy terms because the [building] was 'vacant' as defined by the ... policy, and damages arising from vandalism or theft are not covered for a 'vacant' building."

After Carter moved to change the venue, the plaintiffs filed an amended complaint in which they "adopt[ed] and re-alleg[ed] all claims, demands and averments ... in the original complaint." The plaintiffs then set forth in further detail the factual allegations that, they said, supported their claims against Carter.[1] In addition to the allegations in the original complaint, the amended complaint alleged:

---

[1]The plaintiffs' amended complaint also added other defendants, including Auto-Owners, and asserted other claims against those defendants. However, "[t]he question of proper venue for an action is determined at the commencement of the action," Ex parte Pratt, 815 So. 2d 532, 534 (Ala. 2001), so the addition of new defendants and new claims in the plaintiffs' amended complaint has no bearing on the venue issue. See Ex parte Lugo de Vega, 65 So. 3d 886, 892 (Ala. 2010) ("Later amendments to the complaint to add parties or claims, with the exception of substituting the true name of a fictitiously named party, are not considered in determining whether venue is improper at the commencement of the action."). On the other hand, with respect to Carter, the additional factual allegations in the amended complaint may be considered in resolving the venue issue. See Ex parte Maynard, Cooper & Gale, P.C., 280 So. 3d 391, 396 (Ala. 2018) (taking into consideration the "additional allegations of fact" in the plaintiffs' amended complaint, which was filed after the defendant moved to change

On or about ... June 11, 2024, [the plaintiffs] suffered a covered and compensable loss to [the building] as a result of trespass, vandalism and theft. ... [Carter's] written denial [of the plaintiffs' insurance claim] acknowledged that the loss was caused by a trespass -- '[o]ur inspection concluded that there was significant theft/vandalism ... in the amount of $485,000.' The basis for the denial related specifically to the manner, method and extent to which the plaintiffs were using the [building] at the time of the loss. More particularly, the denial alleged 'the building was vacant at the time of the loss'; the building 'was the support branch for People's Choice Bank'; the building was 'used as a storage facility for their plumbing business but was emptied out for possible sale'; and the building had no 'signs of customary business.' Furthermore, the denial relied upon provisions of the policy that defined and/or addressed whether the property was vacant, the percentage of square footage of occupancy, the purpose of said occupancy and whether the property was being used for a 'customary business.' In so doing, the denial raised issues regarding the ownership, nature, character and use of the insured real estate as it existed at the time of the trespass and theft.

"[The plaintiffs] allege and aver as follows:

"that the denial of the [insurance] claim was contrary to the terms and conditions of the ... policy, and was premised entirely upon the property's ownership/tenancy; history; use and occupancy;

"that the denial was without reasonable and/or arguable basis;

the venue, when considering whether the denial of the defendant's motion was proper).

8

"that the denial was the result of an intentional and/or deliberate failure to properly investigate the [insurance] claim and/or an intentional failure to submit the results of any investigation to an objective, cognitive analysis that was premised upon principles of good faith and fair dealing;

"that during the course of the adjustment of the [insurance] claim, Carter ... did intentionally employ heavy handed, threatening, manipulative, fraudulent and/or intimidating techniques to falsely and/or fraudulently create a debatable reason to deny the [insurance] claim;

"that Carter ... did intentionally, deliberately and fraudulently alter, ignore and/or categorize evidence as to the true use, occupancy, ownership/tenancy, etc. of the subject real property in order to falsely manipulate the [insurance] claim into a pre-determined position of denial;

"that Carter did intentionally misrepresent to third parties that the [insurance] claim was criminal and/or fraudulent. Said misrepresentations were made with the specific intent of affecting said third party's ability and/or willingness to supply evidence that would support payment of the [insurance] claim;

"that Carter ... did deliberately and intentionally ignore evidence as to the use and/or occupancy of the real estate that supported payment of the [insurance] claim; did intentionally categorize evidence as to use, occupancy and/or ownership/tenancy of the real estate at the time of the loss in such a manner as to create a fraudulent/bad faith denial; did deliberately and intentionally categorize and/or attribute evidence to create a false basis for denial; and did intentionally fail to disclose efforts to intimidate a factual witness and that material evidence was being ignored and/or mis-characterized so as to allegedly support a bad faith denial;

"that during the claim adjustment/investigation process, Carter did intentionally defame and slander [the plaintiffs] by knowingly, intentionally, maliciously, and/or deliberately publishing false statements about [the] plaintiffs to third parties. More particularly, [the plaintiffs] aver that Carter did accuse the plaintiffs of a felonious act involving moral turpitude, to wit: filing and/or pursuing a false and/or fraudulent insurance claim. In so doing, Carter did slander the [plaintiffs] with regard to their representations as to the ownership, tenancy, intended and/or actual use, and use capacity of the subject property. [The plaintiffs] aver that the

defamatory and/or slanderous statements were made with personal contempt, to aid Carter's employer/principal in denying the subject claim, and/or to benefit Carter in his work and/or association with Auto-Owners;

"that as a result of the damage to the insured real estate caused by the subject trespass, ... Carter ... had a duty and obligation of good faith and fair dealing to fully and properly investigate the [insurance] claim. Said investigation would have included a good faith assessment of the property's ownership/tenancy; condition; current use; past use and damage;

"that the real estate remains in a state of disrepair; and

"that the real estate has suffered and continues to suffer further diminution in value, ongoing exacerbation of depreciation in condition/value and waste."

Following the filing of the amended complaint, Carter renewed his motion to change the venue to Mobile County. The plaintiffs then filed a response to Carter's motion, arguing that their action against him "involve[s] the use, condition, or damage to real property," which, they said, meant that "the case <u>must</u> be brought <u>where the real estate is</u>

located," i.e., in Dallas County. (Emphasis in original.) According to the plaintiffs, this is true "even if real estate is not the exclusive subject matter of the case." Carter argued in reply that "the subject matter of this dispute is insurance[,] not real estate," and that, although "the coverage decision at issue impacts potential insurance proceeds that might be used to fix the [building], … that does not make real estate the subject of the action."

The circuit court held a hearing on Carter's motion to change the venue, but, if a transcript of that hearing exists, it has not been provided to this Court. Following the hearing, the circuit court issued an order denying Carter's motion. That order states, in relevant part:

> "Carter contends that transfer of the claims against him is required by [Rule] 82(b)(1)(A), [Ala. R. Civ. P.,] the venue provision relating to personal claims against resident defendants. In summary, Carter argues that he is a resident of Mobile County and that none of his alleged overt acts were committed in Dallas County as he never traveled there to investigate the [insurance] claim, did not conduct any business related to the claim in Dallas County, and never had communications with anyone while he was in Dallas County.
>
> "The plaintiffs contend that venue as to Carter is controlled by [Rule] 82(b)(1)(B), [Ala. R. Civ. P.,] the venue provision relating to claims against resident individuals where real estate or trespass is, at least in part, the subject matter of th[e] action. The plaintiffs rely upon the plain language of [Rule] 82(b)(1)(B) and Ex parte Mullen[, 394 So.

12

3d 1072 (Ala. 2024),] and Ex parte E3 Pest Control[, LLC, 414 So. 3d 107 (Ala. 2024)].

"The court has carefully reviewed the case authority relied upon by the parties for their respective positions. After doing so, the court finds that [Rule] 82(b)(1)(B) and the opinions in Ex parte Mullen and Ex Parte E3 Pest Control are controlling. The subject matter of this case, even if not exclusively, is the plaintiffs' real estate located in Dallas County. In Carter's denial letter, he wrote that the [insurance] claim was denied because the plaintiffs' building was vacant at the time of the loss. His letter stated that at the time of the loss: the building was a storage facility; the building was empty; the building had no signs of customary business; the building did not contain an active business; the building did not contain enough personal property to conduct customary operations; the building did not have an active business; and the building did not have a tenant. The letter also quoted policy provisions as to whether less than 31% of the square footage was in use when the loss occurred. Considering the parties' submissions, the predominant factual issues in the case relate directly to the manner in which the property was being used at the time of the loss; who and for what purpose the property was being used at the time of the loss; and, how much of the property was being used at the time of the loss. In the plaintiffs' complaint, allegations are made that directly address these factual issues and evidence. The plaintiffs allege that Carter committed fraud for the specific purpose of affecting a third party's willingness or ability to supply evidence regarding the property that would have supported the [insurance] claim. They allege Carter altered provisions of the policy related to use of the building to manipulate the denial. And, the plaintiffs specifically allege that Carter intentionally ignored and wrongfully categorized evidence regarding the property in a way that would justify a denial. The condition, occupancy, capacity and the manner of use of the real property are at the core of the plaintiffs' factual assertions and their legal claims.

13

Also, in his answer to the complaint, Carter admits that the [insurance] claim involved real property in Dallas County, and that the basis for the denial was the alleged vacancy of the building at the time of the loss.

"The court also finds that the subject matter of the case, at least in part, involves a trespass to the plaintiffs' property. The denial letter states that the plaintiffs' loss was a result of theft and vandalism. A trespass occurred, and it is the very event that gave rise to this case. The plain language of [Rule] 82(b)(1)(B) does not require that a claim of trespass be made directly against the individual defendant for this provision to apply. Ex parte Mullen requires that the language of the rule be applied as written. No such requirement exists.

"....

"It is therefore adjudged and decreed that venue in Dallas County is proper and Carter's motion to transfer venue is denied."

Carter timely sought mandamus relief in this Court.

Standard of Review

"'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"

Ex parte Jones, 414 So. 3d 86, 88-89 (Ala. 2024) (citation omitted).

"'A trial court's denial of a motion to transfer based on improper venue is reviewable by a petition for writ of mandamus, and "such a petition is due to be granted if the petitioner makes a clear showing of error on the part of the

trial court." <u>Ex parte Alabama Power Co.</u>, 640 So. 2d 921, 922
(Ala. 1994).' <u>Ex parte Burr & Forman, LLP</u>, 5 So. 3d 557, 565
(Ala. 2008)."

<u>Ex parte Thomasville Feed & Seed, Inc.</u>, 74 So. 3d 940, 942 (Ala. 2011).

Discussion

The sole issue in this case is whether the circuit court erred by
concluding that Dallas County is the proper venue for the plaintiffs'
action against Carter. Specifically, at issue here is Rule 82(b)(1), Ala. R.
Civ. P., which states:

> "Actions against an individual or individuals having a
> permanent residence in this state:
>
> "(A) Must be brought in the county where the
> defendant or any material defendant resides at the
> commencement of the action, except that if the
> action is a personal action other than an action on
> a contract, it may be brought either in the county
> where the act or omission complained of occurred,
> or in the county of the permanent residence of the
> defendant or one of them;
>
> "(B) <u>Must, if the subject matter of the action
> is real estate, whether or not exclusively</u>, or if it is
> for recovery or the possession thereof or trespass
> thereto, <u>be brought in the county where the real
> estate or a material portion thereof is situated</u>."

(Emphasis added.) Thus, if the "subject matter" of the plaintiffs' action
is the building, "whether or not exclusively," then, pursuant to Rule

15

82(b)(1)(B), venue is proper only in Dallas County, where the building is located. If, on the other hand, the "subject matter" of the plaintiffs' action is not the building, then, pursuant to Rule 82(b)(1)(A), venue is proper in Mobile County, where Carter resides and where "the act or omission complained of occurred."

In denying Carter's motion to change the venue, the circuit court relied on this Court's decisions in Ex parte E3 Pest Control, LLC, 414 So. 3d 107 (Ala. 2024), and Ex parte Mullen, 394 So. 3d 1072 (Ala. 2024). In Ex parte E3 Pest Control, Timothy and Angela Garfield entered into a contract with Michael Adams and E3 Pest Control, LLC (referred to collectively as "E3"), whereby E3 agreed to identify and treat any termite infestations in the Garfields' residence in Baldwin County. After the Garfields discovered termite damage and a termite infestation in their residence, they sued E3, asserting, among other claims, claims of negligence; wantonness; and negligent and/or wanton hiring, training, supervision, and retention of employees. The Garfields filed their complaint in the Mobile Circuit Court because E3's principal place of business was located in Mobile County, and, thereafter, E3 moved to change the venue to Baldwin County, where the Garfields' residence was

16

located. The Mobile Circuit Court denied E3's motion, and E3 then

sought mandamus relief in this Court. In reviewing E3's petition, this

Court discussed its prior decision in Ex parte Mullen:

> "'[T]he … question is whether "the subject matter of the action is real estate, whether or not exclusively." See [Rule 82(b)(1)(B)].' [Ex parte Mullen,] 394 So. 3d [1072,] 1076 [(Ala. 2024)].
>
> "In ascertaining the meaning of the phrase 'subject matter,' we … reasoned as follows in Ex parte Mullen:
>
>> "'[T]he pertinent language of Rule 82(b)(1)(B) is derived from the predecessor statutes to § 6-3-2[, Ala. Code 1975]. The phrase "subject matter" first appeared in one such statute in § 3760 of the Alabama Code of 1876. This Court has explained that "'[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.'" Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So. 2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992)).
>>
>>> "'The first edition of Black's Law Dictionary was published in 1891. At that time, Black's Law Dictionary defined "subject matter" as: "The thing in controversy, or the matter spoken or written about." Black's Law Dictionary 1130 (1st ed. 1891). At the time Rule 82(b)(1)(B) was adopted in 1973, Black's Law Dictionary defined "subject matter" as: "The subject, or matter presented for consideration; the thing in dispute; the right which

17

one party claims as against another ....  Nature of cause of action, and of relief sought."  Black's Law Dictionary 1594 (Rev. 4th ed. 1968).  The current edition of Black's Law Dictionary defines "subject matter" as: "The issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute."  Black's Law Dictionary 1723 (11th ed. 2019).'

"394 So. 3d at 1076-77.

"In relevant part, [in Ex parte Mullen] we applied the plain meaning of the phrase 'subject matter' as follows:

"'[T]he gravamen of the Leos' complaint is that the Mullens improperly designed and constructed the residence located on the property and sold it to the Leos in an uninhabitable condition by making false advertisements and representations concerning the condition of the residence. ...

"'In particular, we note that the Leos averred that the Mullens "had a duty to exercise reasonable care by properly designing and constructing the [Leos]' home in a good and workmanlike manner free from defects.  [The Mullens] breached their duty to exercise reasonable care by [im]properly designing and constructing the [Leos]' home."  The Leos also averred that, "[i]n entering into the contract for the purchase of the [p]roperty, [the Mullens] made certain materially false representations to the [Leos], including but not limited to advertisements and representations that the home was new as well as representations that the home was free from known and latent defects."

18

"'Thus, "[t]he thing[s] in controversy" in this case are the condition of the residence located on the property and the Mullens' representations regarding that condition. See Black's Law Dictionary 1130 (1st ed. 1891). Moreover, the condition of the residence and the Mullens' related conduct are the "matter[s] presented for consideration [and] the thing[s] in dispute." See Black's Law Dictionary 1594 (Rev. 4th ed. 1968). The rights asserted by the Leos against the Mullens are reasonable care in the design and construction of the residence and true representations concerning the condition of the residence. See id. Correspondingly, the residence is "the thing in which a ... duty has been asserted," considering that the Leos averred that the Mullens had "a duty to exercise reasonable care by properly designing and constructing the [Leos]' home in a good and workmanlike manner free from defects." See Black's Law Dictionary 1723 (11th ed. 2019). Therefore, we conclude that, in also considering the historical plain meaning of the phrase "subject matter," as used in the context of Rule 82(b)(1)(B), the property is the subject matter of the Leos' action against the Mullens.'

"394 So. 3d at 1079.

"In this case, the Garfields argue that their residence is not the 'subject matter' of their action within the meaning of Rule 82(b)(1)(B) …. In examining their chosen theories of liability, however, we cannot agree that their residence is not the subject matter of at least some of those theories.

"… Regarding their negligence claim, the Garfields alleged that

19

"'the [d]efendants had an independent duty at common law as a regulated licensee of the [Alabama Department of Agriculture and Industries] to fully provide all necessary termite prevention and control services for the [Garfields]' [h]ome in order to protect it against termite infestation and damage and to do so in a reasonable and workmanlike manner.'

"(Emphasis added.) The Garfields further alleged that Adams 'owed independent duties to … [the Garfields] to ensure that the work performed at their [h]ome by employees operating under his license met the minimum standards set forth by the [Alabama Department of Agriculture and Industries'] rules and regulations.' (Emphasis added.) The Garfields' wantonness and 'negligent and/or wanton hiring, training, supervision & retention of employees' claims also rely on these same or similar allegations. Of course, the Garfields' complaint further alleges that the defendants breached these duties and proximately caused resulting damage to their residence, contending: '[T]he [h]ome will require substantial repairs, including the potential that the home may need to be rebuilt.'

"Thus, at least insofar as these three claims are concerned,

"'"[t]he thing[ ] in controversy" ... [is] the condition of the residence located on the property .... See Black's Law Dictionary 1130 (1st ed. 1891). Moreover, the condition of the residence and the [the defendants]' related conduct are the "matter[s] presented for consideration [and] the thing[s] in dispute." See Black's Law Dictionary 1594 (Rev. 4th ed. 1968). The rights asserted by the [Garfields] against the [defendants] are reasonable care in the [inspection and treatment] of the residence .... See id. Correspondingly, the

20

residence is "the thing in which a ... duty has been asserted," considering that the [Garfields alleged] that the [defendants] had "a duty to [protect it against termite infestation and damage and to do so in a reasonable and workmanlike manner]." See Black's Law Dictionary 1723 (11th ed. 2019).'

"Ex parte Mullen, 394 So. 3d at 1079.

"Therefore, we conclude that, in considering the historical plain meaning of the phrase 'subject matter,' as used in the context of Rule 82(b)(1)(B), the Garfields' real property is the subject matter of at least three of the Garfields' claims. Furthermore, in light of the mandatory language of Rule 82(b)(1)(B), venue for this action is proper only in Baldwin County, where the Garfields' residence is located, even assuming, without deciding, that Mobile County would be a proper venue for some of their other claims, had those claims been asserted alone. See Ex parte Mullen, 394 So. 3d at 1079-80 ('"Actions concerning real estate must be brought in the county where the real estate, or a material portion thereof, is located, 'whether it is the exclusive subject matter of the action or not.'"' (quoting Ex parte Travis, 573 So. 2d [281,] 282 [(Ala. 1990)], quoting in turn § 6-3-2(b)(1)))."

414 So. 3d at 113-15.

Carter contends that this case is distinguishable from Ex parte E3 Pest Control and Ex parte Mullen because, unlike the defendants in those cases, he "is not alleged to have directly damaged the [building], nor is he alleged to have breached any duty directly relating to the [building]." Petition, p. 22. Instead, Carter argues, the plaintiffs' claims against him involve "allegations of mishandling an insurance claim and defamatory

21

statements in relation thereto, not real estate." Id., p. 17. Carter concedes that "[t]here is no question that the insurance coverage decision at issue in this action impacts potential insurance proceeds that might be used to repair the … [building]," but he argues that this fact "does not make real estate the subject of the action." Id., p. 24. According to Carter, "[i]ndividual tort claims against an insurance claims representative cannot be converted into a real estate action simply because the insurance claim involves real property." Id., p. 8. Thus, Carter argues that the circuit court "committed clear error by determining that the subject of the tort claims against [him] is real estate." Id., p. 16.

The plaintiffs argue in response that their claims against Carter are based on the contention that he should have approved their insurance claim, and they note that Carter denied the insurance claim based on his conclusion that the building was "vacant," as that term is defined by the policy, at the time it was damaged. The plaintiffs have alleged in their complaint, however, that the building was not "vacant" at that time. As the plaintiffs note in their answer to Carter's petition, "[i]nherent within [the] contentions [in the complaint] [is] that the [building] was not vacant

and that it was being actively used in the course of [their] customary business at the time of the loss." Answer, p. 10. Thus, according to the plaintiffs, "the fundamental issue … at the very heart of [their] claims against [Carter]" is "the condition of the [building] at the time of the loss" -- namely, whether the building was indeed "vacant" at that time. Id., p. 9. In fact, the plaintiffs argue that "[i]t is no understatement to say that this case cannot be adjudicated without deciding the question of vacancy." Id., p. 13 (emphasis in original).

We agree with Carter's contention that this case is distinguishable from Ex parte E3 Pest Control and Ex parte Mullen. In each of those cases, this Court held that the residence in question was the subject matter of the plaintiffs' action because the plaintiffs had alleged that the defendants had a duty with respect to the residence -- the duty to identify and treat termite infestations in Ex parte E3 Pest Control and the duty to properly design and construct in Ex parte Mullen -- and that the defendants had breached that duty, thereby resulting in damage to the residence. Here, on the other hand, the plaintiffs have not alleged that Carter had any duty with respect to the building or that he caused any damage to the building. Instead, the plaintiffs have alleged only that

23

Carter tortiously denied their insurance claim and that he tortiously made misrepresentations to third parties regarding the plaintiffs' motivation for filing that claim. Thus, in this case, "'the "matter[] presented for consideration [and] the thing[] in dispute,"'" Ex parte E3 Pest Control, 414 So. 3d at 115 (citations omitted), is not Carter's conduct with respect to the building itself -- as was the case in Ex parte E3 Pest Control and Ex parte Mullen -- but, rather, is Carter's conduct during the course of denying the plaintiffs' insurance claim.

That said, we realize that the plaintiffs' insurance claim seeks to recover insurance proceeds that ostensibly will be used to repair the building, and it does appear, as the plaintiffs contend, that whether the building was "vacant" at the time it was damaged will be a factual issue that must be resolved in this case. However, these facts are not enough to make the building the subject matter of the plaintiffs' action. As this Court has previously explained, "'the term "subject matter," as it is used in our venue statute and rules, "refers to the nature of the cause of action and the nature of the relief sought."'" Ex parte Ambrose, 813 So. 2d 806, 809 (Ala. 2001) (emphasis added; citations omitted). Thus, "'[i]f a complaint does not allege [that the defendant caused] damage or harm to

24

real estate or seek to affect the title to real estate, then real estate is not the subject matter of the action,'" id. (citation omitted), and the plaintiffs' complaint does neither of these things. See also Ex parte AU Hotel, Ltd., 677 So. 2d 1160, 1163 (Ala. 1996) (holding that real estate was not the subject matter of the plaintiffs' action because "[t]he complaint [could not] be construed as alleging any injury to the real estate"); Ex parte E3 Pest Control, supra (holding that plaintiffs' complaint alleged that the defendants' conduct had resulted in damage to the plaintiffs' residence); and Ex parte Mullen, supra (same). Instead, the plaintiffs have alleged only that Carter committed various torts during the course of denying their insurance claim, and the mere fact that the insurance claim involved real estate, as opposed to personal property, is not enough to make the real estate the subject matter of the plaintiffs' action. Cf. Ex parte Ambrose, 813 So. 2d at 809 (noting that "'[t]his Court has held that real property is not the subject matter of a personal-injury action seeking damages … in regard to claims arising from a real-estate transaction'" (quoting Ex parte Nichols, 757 So. 2d 374, 377 (Ala. 1999))); Ex parte Jim Walter Homes, Inc., 712 So. 2d 733, 736 (Ala. 1998) (holding that real estate was not the subject matter of the plaintiffs' action, despite the fact

25

that "all of the events leading up to the filing of the … action c[ould] be traced to the conveyance of [the real estate]").

For the foregoing reasons, we hold that, for purposes of Rule 82(b)(1)(B), the building is not the "subject matter" of the plaintiffs' action against Carter. That holding does not end our analysis, however, because the circuit court alternatively concluded that the "trespass provision" of Rule 82(b)(1)(B) applies in this case -- a conclusion that the plaintiffs contend was correct. As noted, Rule 82(b)(1) states, in pertinent part:

> "Actions against an individual or individuals having a permanent residence in this state:
>
> "....
>
> "(B) Must, if the subject matter of the action is real estate, whether or not exclusively, or if it is for recovery or the possession thereof or trespass thereto, be brought in the county where the real estate or a material portion thereof is situated."

(Emphasis added.)

According to the circuit court, in this case "[a] trespass [to the building] occurred," which is "the very event that gave rise to this case," and the court reasoned that Rule 82(b)(1)(B) "does not require that a claim of trespass be made directly against the individual defendant for [the trespass] provision to apply." The plaintiffs agree with the circuit

26

court, arguing that "the trespass language in [Rule 82(b)(1)(B)] is premised upon 'the subject matter of the action,' not the action itself." Answer, p. 21. In other words, the plaintiffs argue that the "trespass provision" of Rule 82(b)(1)(B) applies if a case involves a trespass to real estate, no matter how tangential that trespass might be to the claims asserted against the defendant. In support of that argument, the plaintiffs contend that "the word 'it' in [Rule 82(b)(1)(B)] clearly refers to the subject matter, not the action." Id. Carter disagrees, arguing that "[t]he trespass component of [Rule 82(b)(1)(B)], under its plain language, is applicable only if 'the action' against the … defendant is for '… trespass … thereto.'" Petition, pp. 26-27.

Once again, we agree with Carter. First, even if the plaintiffs' reading of Rule 82(b)(1)(B) were correct, we have already explained that the subject matter of their action is not the building, and, thus, it certainly is not the trespass to the building that was committed by a third party. More importantly, though, the plaintiffs' reading of Rule 82(b)(1)(B) is not correct. When not otherwise clear, "[a] pronoun … generally refers to the nearest reasonable antecedent." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 18,

p. 144 (Thomson/West 2012). The nearest reasonable antecedent to "it" in Rule 82(b)(1)(B) is "action," not "subject matter." Thus, by replacing "it" with its proper antecedent, Rule 82(b)(1), in pertinent part, reads as follows:

"Actions against an individual or individuals having a permanent residence in this state:

"....

"(B) Must, if the subject matter of the action is real estate, whether or not exclusively, or if [the action] is for recovery or the possession thereof or trespass thereto, be brought in the county where the real estate or a material portion thereof is situated."

(Emphasis added.) In other words, the "trespass provision" of Rule 82(b)(1)(B) is applicable only when a plaintiff's complaint asserts a claim alleging that the defendant has trespassed upon the plaintiff's real estate. This interpretation is strengthened by the fact that it is consistent with § 6-3-2(a), Ala. Code 1975, which does not use the term "subject matter" at all but, instead, straightforwardly provides, in pertinent part:

"In proceedings of a legal nature against individuals:

"(1) All actions for the recovery of land, of the possession thereof, or for a trespass thereto must

28

> be commenced in the county where the land or a material part thereof lies."

(Emphasis added.) See Ex parte Mullen, 394 So. 3d at 1076 (noting that "Rule 82(b)(1)(B) was intended to incorporate the pertinent provisions of the predecessor statutes to § 6-3-2(a) and § 6-3-2(b)"). Thus, because the plaintiffs have not asserted a trespass claim against Carter, the "trespass provision" of Rule 82(b)(1)(B) is not applicable in this case.

## Conclusion

For the reasons set forth herein, Carter has demonstrated a clear legal right to have the plaintiffs' action against him transferred to Mobile County. Thus, we grant Carter's petition and instruct the Dallas Circuit Court to transfer the plaintiffs' action to the Mobile Circuit Court.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Shaw, Wise, Cook, and Parker, JJ., concur.

Bryan, J., dissents, with opinion, which Sellers and Mendheim, JJ., join.

BRYAN, Justice (dissenting).

I respectfully dissent from the Court's decision to issue the writ of mandamus in this case to require a transfer of the underlying action from the Dallas Circuit Court to the Mobile Circuit Court.

In Ex parte Mullen, 394 So. 3d 1072 (Ala. 2024), this Court recently clarified certain aspects of this Court's precedent dealing with the provisions of a particular venue statute -- § 6-3-2, Ala. Code 1975 -- and a related rule adopted by this Court -- Rule 82(b)(1)(B), Ala. R. Civ. P. We noted: "Frequently, in determining whether the location of real property dictates the venue of a particular action, this Court has discussed § 6-3-2(b)(1) and considered both whether the proceeding at issue was of an equitable nature and whether the subject matter of the action was the real estate involved." Ex parte Mullen, 394 So. 3d at 1075.

After considering certain pertinent history, we stated:

"[W]e take this opportunity to clarify the proper standard for evaluating whether the location of particular real property dictates the venue of an action involving that property asserted against resident individuals. Pursuant to §§ 6-1-1(b) and 6-1-2, [Ala. Code 1975,] we conclude that Rule 82(b)(1)(B) governs that issue. As the Committee Comments on the 1973 Adoption of Rule 82 make clear, Rule 82(b)(1)(B) was intended to incorporate the pertinent provisions of the predecessor statutes to § 6-3-2(a) and § 6-3-2(b) to provide a

30

uniform rule to govern venue for 'specific actions involving land.'"

Id. at 1076. We further stated:

"Under the clear language of Rule 82(b)(1)(B), application of that rule does not depend on whether the action at issue involves legal or equitable claims. Instead, venue is dictated by Rule 82(b)(1)(B) 'if the subject matter of the action is real estate, whether or not exclusively, or if it is for recovery or the possession thereof or trespass thereto.'"

Id.

Thus, the first holding of Ex parte Mullen dealt with addressing the unimportance of the distinction between legal and equitable claims under the plain meaning of the language reflected in Rule 82(b)(1)(B). I emphasize that the main opinion in this case does not discuss this holding of Ex parte Mullen at all, and it does not appear to be relevant to the main opinion's analysis.

Therefore, regardless of any impact the main opinion may have on the prospective application of the other rationale set forth in Ex parte Mullen, I do not believe the main opinion can be read as disturbing that decision's first holding in any way, and I would continue to discourage trial courts and attorneys from relying on this Court's older precedents

31

suggesting that a distinction between law and equity is relevant to the particular venue inquiry presented here.

Having made that initial observation, I next note my agreement with the main opinion that this action is not one based upon a trespass within the meaning of Rule 82(b)(1)(B). "Thus, the remaining question is whether 'the subject matter of the action is real estate, whether or not exclusively.'" Ex parte Mullen, 394 So. 3d at 1076 (quoting Rule 82(b)(1)(B)).

Regarding that question, the main opinion quotes from this Court's decision in Ex parte E3 Pest Control, LLC, 414 So. 3d 107 (Ala. 2024), which in turn quoted from Ex parte Mullen, in discussing the historical plain meaning of the phrase "subject matter." In Ex parte Mullen, we noted that the phrase "subject matter" appearing in Rule 82(b)(1)(B) had been derived from predecessor statutes to § 6-3-2 dating back to 1876. Thus, we examined the plain meaning of the phrase "subject matter" in an effort to follow the mandate that

> "'"[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says."' Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So. 2d 293, 296 (Ala.

32

1998)(quoting <u>IMED Corp. v. Systems Eng'g Assocs. Corp.</u>, 602 So. 2d 344, 346 (Ala. 1992))."

<u>Ex parte Mullen</u>, 394 So. 3d at 1076. In other words, we returned to the text of the statute and, in turn, our rule that was derived from the statute.

We further reasoned:

"The first edition of <u>Black's Law Dictionary</u> was published in 1891. At that time, <u>Black's Law Dictionary</u> defined 'subject matter' as: 'The thing in controversy, or the matter spoken or written about.' <u>Black's Law Dictionary</u> 1130 (1st ed. 1891). At the time Rule 82(b)(1)(B) was adopted in 1973, <u>Black's Law Dictionary</u> defined 'subject matter' as: 'The subject, or matter presented for consideration; the thing in dispute; the right which one party claims as against another .... Nature of cause of action, and of relief sought.' <u>Black's Law Dictionary</u> 1594 (Rev. 4th ed. 1968). The current edition of Black's Law Dictionary defines 'subject matter' as: 'The issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute.' <u>Black's Law Dictionary</u> 1723 (11th ed. 2019)."

<u>Ex parte Mullen</u>, 394 So. 3d at 1076-77.

In both <u>Ex parte Mullen</u> and <u>Ex parte E3 Pest Control</u>, at least some of the claims at issue in those actions demonstrated that the "subject matter" of those actions was real estate under the definitions quoted above. Moreover, the previous cases of this Court cited by the parties in both <u>Ex parte Mullen</u> and <u>Ex parte E3 Pest Control</u> that had discussed

33

differing conceptions of the phrase "subject matter" were materially distinguishable on the facts presented; therefore, those decisions provided no reason to depart from the plain meaning of Rule 82(b)(1)(B).

It is at this point that I diverge from the main opinion's analysis. Rather than adhere to the plain meaning of Rule 82(b)(1)(B), the main opinion returns to conceptions of the phrase "subject matter" that appear to be more narrow than the historical plain meaning discussed above. In particular, the main opinion states:

> "'"[I]f a complaint does not allege [that the defendant caused] damage or harm to real estate or seek to affect the title to real estate, then real estate is not the subject matter of the action,"' [Ex parte Ambrose, 813 So. 2d 806, 809 (Ala. 2001)](citation omitted), and the plaintiffs' complaint does neither of these things."

____ So. 3d at ____. In Ex parte Mullen, we acknowledged this Court's precedent articulating the proposition quoted above, but we did not expressly abrogate it because, as already mentioned, the cases cited to this Court applying that proposition were materially distinguishable anyway.

However, when presented with another opportunity to consider the question a few months later in Ex parte E3 Pest Control, this Court again elected to return to the plain meaning of the text reflected in Rule

34

82(b)(1)(B).  In Ex parte E3 Pest Control, we did not again consider the proposition from Ex parte Ambrose quoted above, but we did again determine that certain of this Court's precedents were materially distinguishable on the facts.

Based on my reading of the main opinion, it is unclear to me whether the Court regards Ex parte Ambrose or other of this Court's decisions applying the definition of "subject matter" provided by that decision as factually indistinguishable from the circumstances presented by this case.  However, to the extent that this case has now presented this Court with a true conflict between this Court's precedent attempting to define "subject matter" and the historical plain meaning of the text outlined in Ex parte Mullen, I would continue to adhere to the text of Rule 82(b)(1)(B).

As demonstrated above, the plain meaning of the text of Rule 82(b)(1)(B) does not suggest that the subject matter of an action is real estate only if the action alleges damage to the property or if the action seeks to affect title to the property.  The current edition of Black's Law Dictionary continues to embrace much of the historical meaning we outlined in Ex parte Mullen: "The issue presented for consideration; the

thing in which a right or duty has been asserted; the thing in dispute." Black's Law Dictionary 1730 (12th ed. 2024).

Thus, I now turn to the facts of this case. In its order denying Woodrow Alan Carter's motion to transfer this action to the Mobile Circuit Court, it is clear that the Dallas Circuit Court endeavored to follow this Court's decisions in Ex parte Mullen and Ex parte E3 Pest Control and to adhere to the plain meaning of Rule 82(b)(1)(B).

In so doing, the circuit court noted:

"[T]he Court finds that [Rule] 82(b)(1)(B) and the opinions in Ex parte Mullen and Ex parte E3 Pest Control are controlling. The subject matter of this case, even if not exclusively, is the plaintiffs' real estate located in Dallas County."

Among other things, the circuit court determined:

"The condition, occupancy, capacity and the manner of use of the real property are at the core of the plaintiffs' factual assertions and their legal claims. Also, in his answer to the complaint, Carter admits that the [insurance] claim involved real property in Dallas County, and that the basis for the denial was the alleged vacancy of the building at the time of the loss."

In my view, this stated rationale by the circuit-court judge is sufficient to demonstrate that the denial of the transfer motion in this case does not reflect a situation in which the judge has refused to perform an imperative duty, such that Carter has a clear legal right to the

36

issuance of a writ of mandamus by this Court. See Ex parte Jones, 414 So. 3d 86, 88-89 (Ala. 2024).

I acknowledge that the facts of this case are different from the facts of Ex parte Mullen and Ex parte E3 Pest Control -- both of which involved allegations that the defendants in those cases owed the plaintiffs duties arising directly from real property itself. Nevertheless, it is apparent that the circuit court has determined that the real property at issue in this case, and in particular whether it was vacant or occupied during the relevant period, is an "issue presented for consideration" and a "thing in dispute" in this action. See Black's Law Dictionary at 1730. Although many other issues and disputed questions are no doubt also presented in this action, the plain language of Rule 82(b)(1)(B) provides that "if the subject matter of the action is real estate, whether or not exclusively," the action must "be brought in the county where the real estate or a material portion thereof is situated." (Emphasis added.) Moreover, as we noted in Ex parte Mullen, the language of Rule 82(b)(1)(B) is mandatory. 394 So. 3d at 1079.

In reaching this conclusion, I would not hold that every action involving the denial of an insurance claim pertaining to an insurance contract covering real estate must necessarily fall within the purview of Rule 82(b)(1)(B). However, based on the plaintiffs' allegations in this action and the circuit court's evaluation of the disputed questions and the issues presented for the court's consideration, I do not believe that the circumstances of this case warrant the issuance of the "'drastic and extraordinary'" writ of mandamus by this Court. Ex parte Jones, 414 So. 3d at 88 (citation omitted). In short, it is apparent that the circuit court's decision to deny Carter's motion to transfer this action was based on this Court's precedent emphasizing and applying the plain meaning of Rule 82(b)(1)(B). I see no error by the circuit court in doing so, much less a refusal by the circuit-court judge to perform an imperative duty to transfer this action.

In concluding otherwise, the main opinion appears to restore a narrow definition of "subject matter" to this Court's jurisprudence in this area, limiting that concept to situations in which damage to real property has been alleged or in which the action seeks to affect title to real property. Because I conclude that the plain meaning of the phrase

"subject matter" is not so limited and because I believe that, in so holding, the main opinion undermines this Court's decisions in Ex parte Mullen and Ex parte E3 Pest Control, I dissent from the main opinion's decision to issue the writ of mandamus in this case. To avoid the inevitable confusion to the bench and bar that will undoubtedly be presented by the main opinion's holding, I would deny the present petition for the writ of mandamus.

Sellers and Mendheim, JJ., concur.